## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **AARON CARTER,** | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civ.Act.No. 07-386-SLR |
| | ) | |
| **ELIZABETH BURRIS**, Acting Warden | ) | |
| and **JOSEPH R. BIDEN III**, Attorney | ) | |
| General for the State of Delaware | ) | |
| | ) | |
| Respondents.[1] | ) | |

## ANSWER

Pursuant to Rule 5 of the Rules Governing Section 2254 Actions, 28 U.S.C. foll. § 2254,

respondents state the following in response to the petition for a writ of habeas corpus:

On July 2, 2001, a Delaware Superior Court grand jury indicted Aaron Carter on charges

of twelve counts of possession of a firearm during the commission of a felony, three counts of

first degree robbery, five counts of second degree kidnapping, three counts of aggravated

menacing, one count of second degree conspiracy, and one count of wearing a disguise during

the commission of a felony. Carter was subsequently convicted of all charges and was sentenced

to a term of years on March 14, 2002. On October 16, 2002, the Delaware Supreme Court

affirmed Carter's convictions and sentences on direct appeal. *See Carter v. State*, 2002 Del.

LEXIS 651 (Del. Supr.).

On September 6, 2005, Carter moved for postconviction relief in state court. The

Superior Court denied relief on March 6, 2006. *See State v. Carter*, 2006 Del. Super. LEXIS 144

---

[1] *See* Fed.R.Civ.P. 25(d)(1). Elizabeth Burris was named Acting Warden, effective September 1, 2007.

(Del. Super. Ct.).  That same day, the Delaware Superior Court modified Carter's sentence to strike one count of aggravated menacing and one count of possession of a firearm during the commission of a felony.[2]  The Delaware Supreme Court affirmed the denial of Carter's motion for postconviction relief on October 27, 2006.  *See Carter v. State*, 2006 Del. LEXIS 571 (Del. Supr.).  On June 10, 2007, Carter filed a petition for a writ of habeas corpus, *see* D.I. 1.  This is the respondents' answer to that petition.

Facts[3]

In the early morning hours of March 24, 2001, Defendant Aaron A. Carter and an accomplice broke into the New Castle County residence of Michael and Gina Dudlek. After entering the master bedroom, Carter aimed a .45 caliber handgun at the couple and ordered Michael from his bed. The rest of the Dudlek family, including Gina and their two young children, were herded into a room on the first floor of the house under the guard of Carter's accomplice.

Carter ordered Michael into his car and accompanied him to several area banks to withdraw funds from ATM Machines. Michael deducted $ 500.00 from his joint account using his own ATM card. He was then denied further withdrawals due to established transactional limitations. Carter ordered Michael to return home to obtain his wife's ATM card, to make further deductions. Michael obtained her ATM card and was forced to return to an ATM Machine to deduct another $ 500.00 from the account. After the transactions were complete, Carter ordered Michael to return home. Michael had withdrawn $ 1000.00 on

---

[2] The Superior Court explained that:

Subsequent to the trial in this case, the Supreme Court decided *Poteat v. State*[, 840 A.2d 599 (Del. 2003)]. Poteat concludes that Aggravated Menacing is a lesser-included offense of Robbery First Degree. As a result of that ruling, the convictions of Count XV -- Aggravated Menacing, and the associated weapons charge -- Count XVI, are stricken. The Aggravated Menacing charges associated with other family members are not effected by *Poteat*.

*State v. Carter*, 2006 Del. Super. LEXIS 144, *4 (Del. Super. Ct.).

[3] The facts are taken from the Superior Court's 2006 decision denying Carter's motion for postconviction relief. *See State v. Carter*, 2006 Del. Super. LEXIS 144, at *1-3.

Carter's demand.

Upon returning to the Dudlek residence, Carter ordered Michael to draft a check, payable to cash, in the amount of $ 1000.00. With the check, the $ 1000.00 cash, and various items of property in hand, Carter and his accomplice left the Dudlek residence. Shortly thereafter, the New Castle County police were contacted and responded to the Dudlek residence to investigate.

Later on March 24, 2001, during a Delaware State Police officers' investigation unrelated to the events which occurred at the Dudlek residence, police contact was made with Carter. Carter was found to be in possession of a $ 1000.00 check, drawn on the Dudlek account and $ 851.00 cash. Additionally, upon a search of Carter's bedroom, .45 caliber ammunition was found. Delaware State Police officers contacted New Castle County investigators regarding their findings. Carter was arrested the same day.

<u>Discussion</u>

In his petition for federal habeas relief, Carter raises several different claims of error in state court proceedings. In his first ground, Carter alleges ineffective assistance of counsel and raises several different claims in connection with that ground. *See* D.I. 1 at 6.[4] Carter's second and third grounds are captioned "Equal Protection and Due Process Violations" and allege additional claims of ineffective assistance of counsel and the perceived failure of state courts to take corrective action in response to Carter's concerns. *See* D.I. 1 at 8-10.[5] In all, Carter's

---

[4] Carter's first ground claims that

Prosecutor conveyed to jury, jail house witness would be provided wasn't produced, counsel failed to address issue only black juror requested not be seated, due to having been robbed was seated, ineffective investigation prior trial appointed on short notice, challenge irreivant [sic] evidence, file motion to challenge defective indictment, double jeopardy issue address the several consecutive gune [sic] sentences growing out of the one incident and address plea offer issues.

D.I. 1 at 6.

[5] Carter's second ground alleges that

petition raises twelve discrete errors in the state court proceedings. Federal habeas relief is

inappropriate as many of Carter's claims are unexhausted because he never presented them to the

Delaware Supreme Court. *See* 28 U.S.C. § 2254(b). Indeed, in his direct appeal, Carter only

presented two claims: "a) the prosecutor's repeated suggestive comments on the defendant's post

arrest silence violated the defendant's Fifth and Fourteenth Amendment Rights; and b) in the

absence of a defense objection, the trial judge erred by failing to intervene, *sua sponte*, to cure

the effect of that improper argument." *Carter*, 2002 Del. LEXIS 651, at *1-2. In the appeal

from the Superior Court's order denying Carter postconviction relief, Carter presented only one

claim of ineffective of counsel, alleging that counsel unreasonably failed "to object to [Carter's]

remaining weapon convictions on double jeopardy grounds." *Cater*, 2006 Del. LEXIS 571, at

---

> Counsel appointed shortly prior scheduled trial, defendant was
> being tried for twenty-five (25) serious felonies. Counsel not
> provided adequate time to either investigate or prepare for trial.
> The court refused to address when raised numerious [sic] time
> there was witness which needed be located. Plaintiff was having
> serious medical problems. State witness, defendant both
> represented by public defender's office. requested and not
> provided transcripts of preliminary hearing, which would
> substantiated difference in victims [sic] testimony, and failure to
> identify at preliminary hearing.

D.I. 1 at 8. Carter further elaborates on the medical issues raised in his second ground in the
third ground for relief:

> Defendant informed Delaware Supreme Court suffering with AID's
> [sic] unable to prepare briefs requested, requested that counsel be
> appointed. This established via medical personnal [sic] and taking
> several medication[s] with severe side effects. As with this
> petition had to secure assistance of inmate. The request for
> certioriaq [sic] to U.S. Supreme Court prepared by inmate. Law
> library will not assist in preparing briefs, and other legal motions.

D.I. 1 at 9.

\*3. Accordingly, it appears that all claims, except Carter's double jeopardy claim, *see* D.I. 1 at 6

("double jeopardy issue address the several consecutive gune [sic] sentences growing out of the

one incident . . . ."), are unexhausted.

Of course, Carter may be excused from the exhaustion requirement if there are no state

court remedies available. *See Teague v. Lane*, 489 U.S. 288, 298 (1989); *Castille v. Peoples*, 489

U.S. 346, 351-52 (1989). In this instance, any attempt by Carter to revisit the unexhausted

claims would be procedurally barred under Delaware Superior Court Criminal Rule 61.

Specifically, because more than three years have expired since Carter's conviction became final,

any attempt to relitigate a particular claim in the postconviction context would be untimely under

Criminal Rule 61(i)(1). Moreover, because Carter did not present those claims in his previous

motion for postconviction relief, he would be procedurally barred from doing so under Criminal

Rule 61(i)(2), prohibiting repetitive motions for relief. Finally, any claim by Carter that did not

involve ineffective assistance of counsel would be barred by Criminal Rule 61(i)(3). Because

any attempt by Carter to return to state court to present his unexhausted claims would be

procedurally barred, he is thus excused from the exhaustion requirement. *See White v. Carroll*,

416 F. Supp. 2d 270, 274 (D. Del. 2006) (citations omitted).

Nevertheless, Carter has procedurally defaulted these claims and federal habeas review is

inappropriate unless Carter establishes cause for his procedural default in the state courts and

actual prejudice. *See Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Caswell v. Ryan*, 953

F.2d 853, 861-62 (3d Cir. 1992); *White*, 416 F. Supp. 2d at 274 (citing *Harris v. Reed*, 489 U.S.

255, 263 (1989); *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000)). As the United States

Supreme Court has noted, "'cause' under the cause and prejudice test must be something external

to the petitioner, something that cannot fairly be attributed to him. . . ." *Coleman*, 501 U.S. at

753 (*citing Murray v. Carrier*, 477 U.S. 478, 488 (1986)). *See also McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (cause for procedural default means "some objective factor external to the defense" precluded petitioner's compliance with state procedural rules.). To establish prejudice under the cause and prejudice standard, a petitioner must show "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Carrier*, 477 U.S. at 493-94 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)); *Dawson v. Snyder*, 988 F. Supp. 783, 804-05 (D. Del. 1997). Carter has failed to meet this standard because there were no external factors that prevented Carter from presenting his claims to the Delaware Supreme Court. Indeed, it was Carter himself who prevented the claims raised in his federal petition from being presented to the Delaware Supreme Court. *Cf. Bailey v. Kearney*, 1997 U.S. Dist. LEXIS 8038, *8-10 (D. Del. 1997). Because Carter has not articulated any basis in his petition to establish cause for failing to present his claims to the Delaware Supreme Court, those claims can be dismissed without any consideration of actual prejudice. *See Lawrie v. Snyder*, 9 F. Supp.2d 428, 452 (D. Del. 1998) (*citing Presnell v. Kemp*, 835 F.2d 1567, 1589 n. 29 (11th Cir. 1988); *Carter v. Neal*, 910 F. Supp. 143, 151 (D. Del. 1995)).

In any event, Cater is not entitled to relief because his petition is untimely. Carter's petition was filed on June 10, 2007,[6] subjecting it to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See generally Lindh v. Murphy*, 521 U.S. 320, 336 (1997) (holding the AEDPA applies to "such cases as were filed after the statute's enactment."); *Lawrie v. Snyder*, 9 F. Supp.2d at 433 n.1; *Dawson*, 988 F. Supp. at 802-03. By the terms of §

---

[6] The petition is dated June 10, 2007. D.I. 1 at 16. That is the presumptive date on which Carter gave the petition to prison officials for mailing. In turn, that date is the date the petition is deemed filed. *See, e.g., Woods v. Kearney*, 215 F. Supp.2d 458, 460 (D. Del. 2002).

6

2244(d)(1), as amended by AEDPA, a federal habeas petitioner must file the petition within one year of the date on which the state court judgment became final upon the conclusion of direct review. *See* 28 U.S.C. § 2244(d)(1)(A); *Calderon v. Ashmus*, 523 U.S. 740, 742-43 (1998).[7] The Delaware Supreme Court affirmed Carter's convictions and sentences on October 16, 2002 and his conviction became "final" on January 14, 2003. *See Kapral v. United States*, 166 F.3d 565, 575, 578 (3d Cir. 1999) (when a petitioner does not file a petition for a writ of certiorari in the United States Supreme Court, his conviction becomes final after the expiration of the 90-day filing period). Carter therefore had until January 14, 2004 to file his federal petition without running afoul of the one-year time limitation of § 2244(d)(1). *See Satterfield v. Johnson*, 434 F.3d 185, 191 (3d Cir. 2006); *Burns v. Morton*, 134 F.3d 109, 111 (3d Cir. 1998). Carter, however, did not file his petition until June 10, 2007, more than three years after his conviction became final. Accordingly, the petition is untimely and must be dismissed unless the intervening time can be statutorily or equitably tolled. *See Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999).

The tolling mechanism of § 2244(d)(1) does not save Carter's petition from the one-year limitations period. *See* 28 U.S.C. § 2244(d)(2). When applicable, § 2244(d)(2) tolls the one-year period of § 2244(d)(1) during the time that a properly filed state postconviction action is pending in the state courts. Carter filed a motion for postconviction relief in state court on September 6, 2005. By the time Carter had filed that motion, the one-year limitations period had expired by six hundred and one days. Moreover, Carter's postconviction filing did not reset or revive the limitations period. *See Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000); *Woods*, 215 F. Supp.2d at 462 (citing cases); *Spencer v. Snyder*, 2002 U.S. Dist. LEXIS 14754, *5-6 (D.

---

[7] Carter does not allege, nor can respondents discern, any reason to believe that the terms of 28 U.S.C. § 2244(d)(1)(B)-(D) are applicable.

Del. July 24, 2002) (citing cases). Accordingly, there is no basis for Carter's petition to be saved by the statutory tolling provisions.

Furthermore, while this Court has noted that the limitations period may be subject to equitable tolling, *see, e.g., Thomas v. Snyder*, 2001 U.S. Dist. LEXIS 19969, at *10-11 (D. Del. Nov. 28, 2001) (describing rule), Carter's petition presents no justification for doing so. Equitable tolling saves an untimely petition only when the petitioner "has in some extraordinary way been prevented from asserting his or her rights." *Miller v. New Jersey State Dep't of Corrections*, 145 F.3d 616, 618 (3d Cir. 1998). Equitable tolling, however, requires diligence on the part of the petitioner. *Id.* at 618-19. *See also Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990). To this end, equitable tolling has been "specifically limited" to three situations: "(1) where the defendant (or the court) actively misled the plaintiff; (2) where the plaintiff was in some extraordinary way prevented from asserting his rights; or (3) where the plaintiff asserted his rights mistakenly in the wrong forum." *Bacon v. Carroll*, 2007 U.S. Dist. LEXIS 68877 (D. Del. Sept. 17, 2007) (*quoting Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999)). Carter has offered no justification that would warrant equitable tolling of his more than six hundred day late filing. At best, Carter seemed to suggest that his medical condition, coupled with the lack of assistance in preparing his petition, precluded his compliance with § 2244(d)(1). *See* D.I. 1 at 9.

Carter is not entitled to equitable tolling because he has not demonstrated that "(1) that his medical conditions were sufficiently debilitating to constitute 'extraordinary circumstances' justifying equitable tolling and (2) that he exercised enough diligence in pursuing his § 2254 petition during the limitation period." *Lang v. Alabama*, 2006 U.S. App. LEXIS 11352 (11th Cir. 2006). *See also Ansaldo v. Knowles*, 2005 U.S. App. LEXIS 20024, *4 (9th Cir. 2005)

("Petitioner did not allege that his visual impairment kept him from filing by that date. Rather, Petitioner only claimed that his visual impairment slowed his progress on the petition when he actually began working on it approximately January 15, 2001, one year and ten months after the limitations period had elapsed."); *Rhodes v. Senkowski*, 82 F. Supp. 2d 160, 169-70 (S.D.N.Y. 1999). Here, Carter has offered nothing to corroborate his claims about his medical condition. In any event, Carter has not shown the due diligence necessary to support equitable tolling. Carter waited 601 days from the time that his conviction became final to initiate any state postconviction proceedings; Carter then waited an additional 560 days to file his federal habeas petition. By respondents' calculations, then, a total of 1,161 had passed between the expiration of the one-year limitations period and the time that Carter actually filed his federal petition. Given this lapse of time, Carter can hardly be deemed to have acted diligently in preserving his federal petition. *See LaCava v. Kyler*, 398 F.3d 271, 27-79 (3d Cir. 2005). Accordingly, the doctrine of equitable tolling does not save Carter's petition from the one-year limitations period of § 2244(d)(1) and his petition should be denied as untimely.

Conclusion

Based upon the Superior Court docket sheet, it appears that transcripts of Carter's trial and sentencing have been prepared. In the event that the Court directs the production of any transcript, respondents cannot state with specificity when such transcript would be available. However, respondents reasonably anticipate that such production would take 90 days from the issuance of any such order by the Court.

For the foregoing reasons, the petition for writ of habeas corpus should be dismissed without further proceedings.

Kevin M. Carroll
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
Del. Bar. ID No. 4836
Kevin.Carroll@state.de.us

DATE: November 16, 2007

LEXSEE



Positive
As of: Nov 16, 2007

**AARON K. CARTER, Defendant, Below Appellant, v. STATE OF DELAWARE, Plaintiff Below, Appellee.**

**No. 182, 2002**

**SUPREME COURT OF DELAWARE**

**808 A.2d 1204; 2002 Del. LEXIS 651**

**September 24, 2002, Submitted**
**October 16, 2002, Decided**

**NOTICE:**

[*1]  THIS OPINION HAS NOT BEEN RE-LEASED FOR PUBLICATION IN THE PERMANENT LAW REPORTS. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

**SUBSEQUENT HISTORY:** Post-conviction relief denied at State v. Carter, 2006 Del. Super. LEXIS 144 (Del. Super. Ct., Mar. 3, 2006)

**PRIOR HISTORY:**   Court Below: Superior Court of the State of Delaware in and for New Castle County. Cr. ID No. 0105020018.

**DISPOSITION:**   Affirmed.

**CORE TERMS:** credibility, prosecutorial, misconduct, silence, arrest, plain error, robbery

**JUDGES:** Before VEASEY, Chief Justice, WALSH and STEELE, Justices.

**OPINION BY:** Myron T. Steele

**OPINION**

### *ORDER*

This 16th day of October, 2002, upon consideration of the briefs on appeal and the record below, it appears to the Court that:

(1) In March of 2002, a Superior Court jury convicted Appellant Arron K. Carter of Burglary in the First Degree, twelve counts of Possession of a Firearm during the Commission of a Felony, three counts of First Degree Robbery, five counts of Second Degree Kidnapping, three counts of Aggravated Menacing, one count of Second Degree Conspiracy, and one count of Wearing a Disguise during the Commission of a Felony.

(2) Carter claims that: a) the prosecutor's repeated suggestive comments on the defendant's post arrest silence violated the defendant's Fifth and Fourteenth Amendment Rights; and, b) in the absence of a defense objection, the trial judge erred by failing to intervene, *sua sponte*, to cure the [*2] effect of that improper argument. We find no prosecutorial misconduct and, therefore, need not reach the second argument. Accordingly, we AFFIRM.

(3) The State's comment in closing rebuttal did not amount to improper comment on the defendant's post arrest silence and did not rise to the level of misconduct described by this Court in *Williams v. State*. [1] In *Williams*, we reversed a conviction below because of prejudicial prosecutorial comment in closing argument that constituted plain error. We held that the closing remarks improperly suggested to the Jury that in order to acquit the accused, they must believe that the State's witnesses lied. The remarks consequently improperly branded the defendant as a liar.

1  *Williams v. State*, Del. Supr., 803 A.2d 927 (2002) (per curiam)

(4) This case is distinguishable. Here, the State did not use improper language, maintained an emphasis on the jury's role as assessors of credibility, and permissibly responded to the defense's commentary on the State's

[*3] failure to call certain witnesses. [2] Though the Defendant's credibility was at issue at trial, it cannot be said that it was a central issue in a close case. [3] While the Defendant's defense that the State "had the wrong man" is similar to that of *Williams*, there is ample evidence to support the jury verdict [4] and it is likely that the jury's assessment of Defendant's credibility was not a critical factor in the sense that their decision turned on whether they believed the defendant or the witnesses for the State.

2    *See Michael v. State,* 529 A.2d 752, 762 (Del. 1987) (explaining and applying the invited response doctrine).

3    *Trump v. State,* Del. Supr., 753 A.2d 963, 964-965 (2000).

4    When arrested, Defendant was in possession of: (1) the Dudleks' check written to cash in the amount of $ 1000, (2) $ 851 in cash consistent with the amounts withdrawn and plan to short-change his companion on the proceeds of the robbery; and, (3) .45 caliber ammunition. Furthermore, Defendant's appearance was consistent with the Dudleks' description.

[*4]    Accordingly, there was no plain error in this case sufficient to warrant reversal.

NOW, THEREFORE, IT IS ORDERED that the decision of the Superior Court be, and hereby is, AFFIRMED.

BY THE COURT:

/s/ Myron T. Steele

Justice

LEXSEE



Positive
As of: Nov 16, 2007

### STATE OF DELAWARE v. AARON CARTER, Defendant.

No. IN 01-06-2606R1, 2607R1, 2608R1; IN 01-06-1755R1, 1756R1, 1757R1, 1758 R1,
1759R1,1760R1, 1761R1, 1762R1, 1763R1, 1764R1, 1765R1, 1766R1, 1767R1,
1768R1, 1769R1, 1770R1, 1771R1, 1772R1, 1773R1, 1774R1, 1775R1, 1778R1, IN-
01-06-2373R1

### SUPERIOR COURT OF DELAWARE, NEW CASTLE

### 2006 Del. Super. LEXIS 144

### December 8, 2005, Submitted
### March 3, 2006, Decided

**NOTICE:**

[*1]    THIS OPINION HAS NOT BEEN RE-
LEASED FOR PUBLICATION. UNTIL RELEASED,
IT IS SUBJECT TO REVISION OR WITHDRAWAL.

**SUBSEQUENT HISTORY:** Affirmed by Carter v.
State, 2006 Del. LEXIS 571 (Del., Oct. 27, 2006)

**PRIOR HISTORY:** Carter v. State, 808 A.2d 1204,
2002 Del. LEXIS 651 (Del., 2002)

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Petitioner prisoner sought
postconviction relief in connection with his conviction
for various felonies arising from a home invasion and
robbery. His total sentence was 57 years of incarceration,
followed by probation. The State requested a resentenc-
ing due to the change in sentencing. The prisoner con-
tended, inter alia, that his counsel was ineffective.

**OVERVIEW:** The prisoner and an accomplice broke
into a residence of a couple and their two young children.
The prisoner ordered the husband into his car and ac-
companied him to several area banks to withdraw funds
from ATM Machines. The prisoner ordered the husband
to draft a check, payable to cash, in the amount of $
1000. Subsequent to the trial, Poteat was decided and
determined that aggravated menacing was a lesser-
included offense of robbery in the first degree. The court

held that given defendant's age of 44, the likelihood that
he would ever be released was negligible. Although a
resentencing was permissible, the court declined to do
so. There was no indication from the prisoner as to how
the efforts of his counsel fell below an objective standard
of reasonableness, or in what way the outcome of his
case would have been different. There was nothing in the
record or in the prisoner's petition to support a claim that
the plea offer achieved by his counsel, and rejected by
him, was less than excellent. The prisoner failed to dem-
onstrate any other basis for postconviction relief.

**OUTCOME:** The petition for postconviction relief was
denied. The convictions of aggravated menacing and the
associated weapons charge were stricken as to one of the
victims. The prisoner's total sentence was changed to 53
years.

**CORE TERMS:** aggravated, menacing, weapon, incar-
ceration, convicted, sentence, robbery, prepare, felony,
talk, preliminary hearing, postconviction, investigate,
accomplice, indictment, probation, sentenced, indicted,
vague, card, factually, family members, failure to object,
failure to file, irrelevant evidence, double jeopardy, ob-
jective standard of reasonableness, lesser-included, in-
vestigator, resentencing

**LexisNexis(R) Headnotes**

*Criminal Law & Procedure > Counsel > Effective Assistance > Tests*

[HN1]A defendant must support his claim of ineffective with concrete allegations of actual prejudice. To succeed on such a claim, a defendant, must show that counsel's representation fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

**JUDGES:** Honorable Susan C. Del Pesco.

**OPINION BY:** Susan C. Del Pesco

**OPINION**

**OPINION**

Petitioner Aaron A. Carter seeks postconviction relief in connection with his conviction on March 13, 2002, of various felonies arising from a home invasion and robbery. His total sentence was fifty-seven years of incarceration, followed by probation.

**Factual Background**

In the early morning hours of March 24, 2001, Defendant Aaron A. Carter and an accomplice broke into the New Castle County residence of Michael and Gina Dudlek. After entering the master bedroom, Carter aimed a .45 caliber handgun at the couple and ordered Michael from his bed. The rest of the Dudlek family, including Gina and their two young children, were herded into a room on the first floor of the house under the guard of Carter's accomplice.

Carter ordered Michael into his car and accompanied him to several area banks to withdraw funds from ATM Machines. Michael deducted $ 500.00 from his joint account using his own ATM card. He was then denied further withdrawals due to established transactional limitations. Carter ordered [*2] Michael to return home to obtain his wife's ATM card, to make further deductions. Michael obtained her ATM card and was forced to return to an ATM Machine to deduct another $ 500.00 from the account. After the transactions were complete, Carter ordered Michael to return home. Michael had withdrawn $ 1000.00 on Carter's demand.

Upon returning to the Dudlek residence, Carter ordered Michael to draft a check, payable to cash, in the amount of $ 1000.00. With the check, the $ 1000.00 cash, and various items of property in hand, Carter and his accomplice left the Dudlek residence. Shortly thereafter, the New Castle County police were contacted and responded to the Dudlek residence to investigate.

Later on March 24, 2001, during a Delaware State Police officers' investigation unrelated to the events which occurred at the Dudlek residence, police contact was made with Carter. Carter was found to be in possession of a $ 1000.00 check, drawn on the Dudlek account and $ 851.00 cash. Additionally, upon a search of Carter's bedroom, .45 caliber ammunition was found. Delaware State Police officers contacted New Castle County investigators regarding their findings. Carter was arrested the same [*3] day.

On March 13, 2002, a Superior Court jury convicted Carter of first degree burglary, three counts of first degree robbery, five counts of second degree kidnapping, three counts of first degree aggravated menacing, twelve counts of possession of a deadly weapon during the commission of a felony, second degree conspiracy, and wearing a disguise during the commission of a felony. Carter was sentenced to fifty-seven years of Level V incarceration followed by probation. On October 16, 2002, the Delaware Supreme Court affirmed Carter's conviction. [1]

1 *Carter v. State,* 808 A.2d 1204 (Del. 2002)

Indicted Charges

Carter was indicted on twenty-six counts associated with the four members of the Dudlek family and convicted on all charges. Among the indicted charges were three counts of Robbery First Degree (Counts III, V, and IX) alleging the use of force on Michael Dudlek.

The indictment also contains one count of Aggravated Menacing alleging Michael Dudlek as the victim (Count XV). That [*4] count of Aggravated Menacing has an associated count of Possession of a Firearm During the Commission of a Felony (Count XVI).

There are two other counts of Aggravated Menacing alleging other family members as the victims (Count XIII-Gina Dudlek, Count XVII-Erin Dudlek). Both Aggravated Menacing charges have associated weapons charges (Count XIV and XVI).

Error of Law

Subsequent to the trial in this case, the Supreme Court decided *Poteat v. State.* [2] Poteat concludes that Aggravated Menacing is a lesser-included offense of Robbery First Degree. As a result of that ruling, the convictions of Count XV -- Aggravated Menacing, and the associated weapons charge -- Count XVI, are stricken. The Aggravated Menacing charges associated with other family members are not effected by *Poteat.*

2 *Poteat v. State,* 840 A.2d 599 (Del. 2003).

The State has requested a resentencing of the defendant due to the change in sentencing. The defendant has been sentenced to serve a total of fifty-seven [*5] years at Level V, with probation to follow. The modification caused by this decision eliminates a three year minimum mandatory sentence on one weapon charge (IN 01-06-2608) and a one year sentence on the aggravated menacing charge (IN 01-06-1775). With this adjustment, he remains sentenced to fifty-three years of incarceration. Given the defendant's age, 44 years, born January 20, 1962, the likelihood that he will ever be released is negligible. Although a resentencing is legally permissible, [3] I decline to do so under these circumstances.

> 3  *White v. State*, 576 A.2d 1322, 1328 (Del.1990).

Ineffective Assistance of Counsel

The defendant charges his counsel with failing to investigate and prepare for trial; failure to object to irrelevant evidence; failure to file a motion to dismiss the Aggravated Menacing charge as a lesser-included offense; failure to challenge defective indictment and double jeopardy issues; and errors resulting in defendant not securing a more lenient plea.

[HN1]A defendant [*6] must support his claim of ineffective with concrete allegations of actual prejudice. [4] To succeed on such a claim, a defendant, "'must show that counsel's representation fell below an objective standard of reasonableness,' and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" [5]

> 4  *Austin v. State*, 2002 WL 32071647 *2 (Del. Super.) (citations omitted)

> 5  *Flamer v. State*, 585 A.2d 736 at 753 (citing *Albury v. State*, 551 A.2d 53, 58 (Del. 1988)).

As to the failure to investigate and prepare a claim, his counsel Neil Lapinski, Esquire, has responded that he had an adequate period of time to prepare. [6] When assigned to the case, he quickly secured a continuance of the trial date to permit him to do the work necessary to prepare. He obtained discovery from defendant's first counsel, subpoenaed additional records, and continued the relationship prior counsel had established [*7] with a private investigator. He also took photographs, and met with the defendant on at least two occasions prior to trial. There is no indication from the defendant as to how the efforts of his counsel fell below an objective standard of reasonableness, or in what way the outcome of his case would have been different.

> 6  Letter Affidavit of Neil R. Lapinski to the Court (Dec. 7, 2005), D.I. 44

The second claim regarding failure to object to irrelevant evidence is too vague to merit consideration.

The third claim, failure to file a motion to dismiss Aggravated Menacing as a lesser included offense, is without merit. The state of the law at the time of defendant's trial did not support such a motion. More importantly, the defendant now, pursuant to this order, will receive the benefit of that change in the law.

The next claim regarding a defective indictment and double jeopardy are too vague to merit consideration.

The final claim regarding a more lenient plea is especially ironic. The Court conducted a [*8] colloquy with the defendant prior to the trial to ensure that he understood that the plea he was rejecting, which carried nine years of incarceration, was withdrawn once trial commenced. He was also informed that there was a large amount of mandatory time associated with the charges so that, if convicted, there would be a "huge, huge penalty." [7] The defendant decided to go to trial; he was convicted. There is nothing in the record or in his petition to support a claim that the plea offer achieved by his counsel, and rejected by him, was less than excellent.

> 7  Trial Tr., 3-4, March 7, 2002.

The balance of the allegations are designated constitutional violations and Equal Protection denials, but there is no authority cited for any of them.

Dealing with them factually, the allegation regarding the statement of Larry Washington is without merit. Washington was a witness. The State had no duty under Rule 16 or under *Brady v. Maryland* [8] to provide his recorded statement. The statement was subject to [*9] *Jencks v. United States.* [9] The State exceeded its obligations. Defense counsel acknowledges that the statement was received and reviewed, and that he helped to redact the statement prior to his cross-examination of Mr. Washington. [10]

> 8  *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

> 9  *Jencks v. United States*, 353 U.S. 657, 77 S. Ct. 1007, 1 L. Ed. 2d 1103 (1957).

> 10  Letter Affidavit of Neil R. Lapinski to the Court (Dec. 7, 2005), D.I. 44

The defendant refers to a comment I made on the record about an encounter with the victim, Michael Dudlek. [11] Other than this bare assertion, the defendant does

not explain why he considers that to be a basis for post-conviction relief. It is not.

> 11  Trial Tr., 48-49, March 13, 2002.

> > The Court: "I ran into Mr. Dudlek at the salad bar when the case began, and I told him I couldn't talk to him. And I hope that didn't seem rude, but at the time it's very important, when legal proceedings are going on, that there not appear to be any communications that are inappropriate. And therefore, I don't talk to anybody who's involved in litigation, regardless of what their interests might be, and I don't talk to attorneys unless I talk to both of them. Those are the rules, and those make sure that our process as it proceeds isn't tainted. So when it's over with, we have a sense of finality. And I hope you understand that explanation."

[*10]  The claim associated with removal of a juror is too vague to discuss, and merits no consideration. As is the claim that "no pretrial motions were filed." [12]

> 12  Def.'s Mot., at 3, D.I. 39

The conflict as to representation was addressed when it arose. The conflict arose when it was determined that others with an interest in the case were represented, or had been represented, by the Office of the Public Defender. Lapinski was then appointed. As Lapinski noted in his letter responding to this petition:

> > Mr. Carter was represented by the Office of the Public Defender at his preliminary hearing before a conflict arose. Thereafter, court appointed counsel was obtained. It should also be noted that I was in possession of the preliminary hearing transcript and reviewed it repeatedly in preparation for trial. [13]

> 13  Letter Affidavit of Neil R. Lapinski to the Court (Dec. 7, 2005), D.I. 44

[*11]  The final ground for relief is addressed above. It is factually incorrect; defense counsel did have a copy of the preliminary hearing transcript.

The defendant has failed to demonstrate any basis for postconviction relief, other than the sentence modification associated with the charges of Aggravated Menacing involving Michael Dudlek and the related weapon charge.

The Petition is DENIED. A modified sentencing is issued concurrent with this Opinion.

IT IS SO ORDERED.

The Honorable Susan C. Del Pesco

LEXSEE


Analysis
As of: Nov 16, 2007

**AARON CARTER, Defendant Below-Appellant, v. STATE OF DELAWARE, Plaintiff Below-Appellee.**

**No. 166, 2006**

**SUPREME COURT OF DELAWARE**

**2006 Del. LEXIS 571**

**September 26, 2006, Submitted**
**October 27, 2006, Decided**

**NOTICE:**

[*1]    THIS OPINION HAS NOT BEEN RE-LEASED FOR PUBLICATION IN THE PERMANENT LAW REPORTS. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

**SUBSEQUENT HISTORY:** US Supreme Court certiorari denied by Carter v. Del., 2007 U.S. LEXIS 4405 (U.S., Apr. 23, 2007)

**PRIOR HISTORY:**    Court Below-Superior Court of the State of Delaware in and for New Castle County. Cr. ID No. 0105020018A.
State v. Carter, 2006 Del. Super. LEXIS 144 (Del. Super. Ct., Mar. 3, 2006)

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** The New Castle County Superior Court (Delaware) entered a judgment that mostly denied defendant's motion for postconviction relief after defendant was convicted of multiple offenses, and his convictions and sentences were affirmed by the state supreme court on direct appeal. Defendant appealed the denial of that part of the motion that alleged he received ineffective assistance of counsel.

**OVERVIEW:** Defendant was found guilty by a jury of multiple offenses, including 12 counts of possession of a firearm during the commission of a felony. His convictions and sentences were affirmed by the state supreme court on direct appeal. Thereafter, defendant filed a post-

conviction relief motion and did manage to obtain some relief regarding his convictions and sentence. However, he did not obtain any relief on his claim that his trial counsel provided ineffective assistance by failing to object to 11 of his 12 convictions regarding possession of a firearm during the commission of a felony. However, the state supreme court found that under Delaware law, it was not a violation of double jeopardy for the State to charge possession of a firearm during the commission of a felony for each firearm possessed and for each felony committed, as was done in defendant's case. As a result, the state supreme court found that defendant did not show that he had been prejudiced by his counsel's conduct.

**OUTCOME:** The trial court's judgment was affirmed.

**CORE TERMS:** aggravated, menacing, felony, double jeopardy, sentence, firearm, opening brief, ineffective assistance, weapon, postconviction, manifest, robbery, trial counsel, failing to object, incarceration

**LexisNexis(R) Headnotes**

*Criminal Law & Procedure > Counsel > Effective Assistance > Tests*
*Criminal Law & Procedure > Counsel > Effective Assistance > Trials*
*Evidence > Inferences & Presumptions > Presumptions*
[HN1]In order to prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that his counsel's representation fell below an objective standard

of reasonableness and that, but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceedings would have been different. Although not insurmountable, the Strickland standard is highly demanding and leads to a strong presumption that the representation was professionally reasonable.

*Criminal Law & Procedure > Criminal Offenses > Weapons > Possession > General Overview*
*Criminal Law & Procedure > Double Jeopardy > General Overview*
[HN2]Under Delaware law, it is not a violation of double jeopardy for the State to charge Possession of a Firearm During the Commission of a Felony, Del. Code Ann. tit. 11, § 1447A, for each firearm possessed and for each felony committed.

**JUDGES:** Before STEELE, Chief Justice, HOLLAND and BERGER, Justices.

**OPINION BY:** Randy J. Holland

**OPINION**

**ORDER**

This 27th day of October 2006, upon consideration of the appellant's opening brief and the appellee's motion to affirm pursuant to Supreme Court Rule 25(a), it appears to the Court that:

(1) The defendant-appellant, Aaron Carter, filed an appeal from the Superior Court's March 3, 2006 order denying his motion for postconviction relief pursuant to Superior Court Criminal Rule 61. The plaintiff-appellee, the State of Delaware, has moved to affirm the judgment of the Superior Court on the ground that it is manifest on the face of Carter's opening brief that the appeal is without merit. [1] We agree and affirm.

    1  Supr. Ct. R. 25(a).

[*2]  (2) In March 2002, Carter was found guilty by a Superior Court jury of three counts of Robbery in the First Degree, five counts of Kidnapping in the Second Degree, three counts of Aggravated Menacing in the First Degree, twelve counts of Possession of a Firearm During the Commission of a Felony, and single counts of Burglary in the First Degree, Conspiracy in the Second Degree, and Wearing a Disguise During the Commission of a Felony. He was sentenced to a total of fifty-seven years of Level V incarceration, to be followed by probation. Carter's convictions and sentences were affirmed by this Court on direct appeal. [2]

    2  *Carter v. State*, Del. Supr., 808 A.2d 1204, Steele, J. (2002).

(3) In September 2005, Carter filed a motion for postconviction relief in the Superior Court. Following briefing, the Superior Court denied the motion in part and granted it in part, vacating Carter's convictions of Aggravated Menacing and one associated conviction of Possession of a Firearm During the Commission [*3] of a Felony. [3] The Superior Court noted that the 3-year minimum mandatory sentence on the weapon conviction was thereby eliminated, as was the one-year sentence on the aggravated menacing conviction, resulting in a total of fifty-three years of Level V incarceration.

    3  *Poteat v. State*, 840 A.2d 599, 604-06 (Del. 2003) (because aggravated menacing is a lesser-included offense of first degree robbery, the imposition of a separate sentence for each crime constitutes a violation of double jeopardy).

(4) In this appeal, Carter claims that his trial counsel provided ineffective assistance by failing to object to his eleven remaining weapon convictions on double jeopardy grounds. To the extent Carter has not argued other grounds to support his appeal that previously were raised, those grounds are deemed waived and will not be addressed by this Court. [4]

    4  *Murphy v. State*, 632 A.2d 1150, 1152 (Del. 1993). In his brief in the Superior Court, Carter also claimed that his counsel failed to: prepare for trial; object to irrelevant evidence; file a motion to dismiss the aggravated menacing charge; challenge the indictment; and secure a more lenient plea agreement.

[*4]  (5) [HN1]In order to prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that his counsel's representation fell below an objective standard of reasonableness and that, but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceedings would have been different. [5] Although not insurmountable, the Strickland standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." [6]

    5  *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

    6  *Flamer v. State*, 585 A.2d 736, 753 (Del. 1990).

(6) [HN2]Under Delaware law, it is not a violation of double jeopardy for the State to charge Possession of a Firearm During the Commission of a Felony [7] for each

firearm possessed and for each felony committed. [8] As such, Carter's counsel did not commit error by failing to object to his eleven remaining weapon convictions on double jeopardy grounds. [*5] Because Carter has failed to demonstrate that any error on the part of his trial counsel resulted in prejudice to his case, his claim of ineffective assistance of counsel is unavailing.

7  Del. Code Ann. tit. 11, § 1447A.

8  *Nance v. State*, 903 A.2d 283, 288 (Del. 2006).

(7) It is manifest on the face of Carter's opening brief that this appeal is without merit because the issues presented on appeal are controlled by settled Delaware law and, to the extent that judicial discretion is implicated, there was no abuse of discretion.

NOW, THEREFORE, IT IS ORDERED that, pursuant to Supreme Court Rule 25(a), the State of Delaware's motion to affirm is granted. The judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ Randy J. Holland

Justice

LEXSEE



Positive
As of: Nov 16, 2007

**WESTON D. BAILEY, Petitioner, v. RICK KEARNEY, Warden, Sussex Correctional Institution and M. JANE BRADY, Attorney General of the State of Delaware, Respondents.**

**Civil Action No. 95-279-SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**1997 U.S. Dist. LEXIS 8038**

**April 3, 1997, Decided**

**NOTICE:** [*1] FOR ELECTRONIC PUBLICATION ONLY

**SUBSEQUENT HISTORY:** Post-conviction relief denied at Bailey v. State, 2005 Del. LEXIS 227 (Del., June 20, 2005)

**PRIOR HISTORY:** Bailey v. State, 1995 Del. LEXIS 46 (Del., Jan. 30, 1995)

**DISPOSITION:** Bailey's motion for writ of habeas corpus denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Petitioner inmate filed an action for habeas corpus relief pursuant to 28 U.S.C.S. § 2254 against respondents, a warden and a state attorney-general, challenging his conviction of robbery in the first degree, possession of a deadly weapon in the commission of a felony and assault in the first degree.

**OVERVIEW:** The inmate pleaded guilty to the charges against him. His motion for post-conviction relief set forth three claims. He argued his conviction was unlawful because the trial court judge did not explain the action necessary for him to be guilty of the crimes charged. He also contended the judge failed to ask him if his plea had been coerced in any way and that the judge failed to canvass the issue of the case and relied upon statements of the inmate's counsel in determining the plea was voluntary. Under an amendment to 28 U.S.C.S. § 2254, fac-

tual determinations made by a state court were presumed correct unless rebutted by clear and convincing evidence. This change did not affect the outcome of the case; therefore, the court refused to decide as to the applicability of the amendment. The court also found the exhaustion requirements of § 2254 were waived by its prior order, however, there was not a sufficient showing to support claims the inmate would be injured if his post-conviction relief motion alleging procedural default was not reviewed. Claims the plea colloquy was defective as not being in compliance with Fed.R.Crim.P. 11 were not cognizable on collateral attack.

**OUTCOME:** The court denied the petition for habeas corpus relief.

**CORE TERMS:** colloquy, robbery, post-conviction, procedural default, plea of guilty, miscarriage of justice, innocence, guilty plea, opening brief, personally, answered, sentence, state remedies, failed to raise, exhaustion requirement, collateral attack, convicted, corpus, deadly weapon, felony, federal habeas, actual prejudice, defense counsel, possible penalty, voluntariness, incarceration, procedurally, sentencing, cognizable, defaulted

**LexisNexis(R) Headnotes**

*Criminal Law & Procedure > Habeas Corpus > Exhaustion of Remedies > Prerequisites*

*Criminal Law & Procedure > Habeas Corpus > Procedure > Filing of Petition > Time Limitations > Antiterrorism & Effective Death Penalty Act*
*Evidence > Inferences & Presumptions > Presumption of Regularity*

[HN1]28 U.S.C.S. § 2254(d) has been amended to place time limits on petitions for relief from state court convictions, permit federal courts to deny relief on the merits despite failure to exhaust state remedies, and foreclose relief on grounds previously adjudicated in state court, unless such previous adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. With regard to factual issues, the new provisions state that any factual determination made by a state court shall be presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C.S. § 2254(e).

*Criminal Law & Procedure > Habeas Corpus > Exhaustion of Remedies > Prerequisites*
*Governments > Courts > Judicial Comity*

[HN2]Before the district court reviews a habeas corpus petitioner's claims, it will ascertain whether petitioner has exhausted all available state remedies. 28 U.S.C.S. § 2254(b). Comity is the rationale underlying the exhaustion requirement, which allows state courts the first opportunity to pass on alleged defects in the criminal proceedings leading to the conviction at issue. Recognizing that principles of federal-state comity must restrain unnecessary federal intrusions into state criminal trials, the United States Supreme Court has held that the exhaustion requirement must be "rigorously enforced." To exhaust state remedies, a petitioner must have raised before the highest state court the factual and legal premises of the claims for relief he asserts in the federal proceeding. In a case where the court determines that the petitioner has not exhausted all state remedies, the court may also determine whether recourse to state collateral review whose results have effectively been predetermined would justify review by the district court.

*Criminal Law & Procedure > Habeas Corpus > Cognizable Issues > General Overview*
*Criminal Law & Procedure > Habeas Corpus > Procedural Default > Actual Innocence & Miscarriage of Justice > Miscarriage of Justice*

[HN3]Federal habeas review of the claims is barred unless petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in the fundamental miscarriage of justice. The Supreme Court has held that "cause" under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him. To demonstrate cause for a procedural default, petitioner must show that "some objective factor external to the defense" precluded his compliance with the state procedural rules.

*Criminal Law & Procedure > Habeas Corpus > Cognizable Issues > Ineffective Assistance*
*Criminal Law & Procedure > Habeas Corpus > Exhaustion of Remedies > General Overview*
*Criminal Law & Procedure > Habeas Corpus > Procedural Default > General Overview*

[HN4]Ineffective assistance of counsel may constitute cause for a procedural default. However, this claim must itself be presented to the state courts as required by the exhaustion doctrine.

*Criminal Law & Procedure > Habeas Corpus > Procedural Default > Actual Innocence & Miscarriage of Justice > Exceptions to Default*
*Criminal Law & Procedure > Habeas Corpus > Procedural Default > Actual Innocence & Miscarriage of Justice > Miscarriage of Justice*
*Evidence > Procedural Considerations > Exclusion & Preservation by Prosecutor*

[HN5]The miscarriage of justice exception in habeas corpus cases is concerned with actual innocence as compared to legal innocence. "Actual innocence" requires the petitioner to show that it is more likely than not that no reasonable juror would have convicted him. The petitioner must show a fair probability that, in light of all the evidence, including that alleged to have been illegally admitted, but with due regard to any unreliability of it, and evidence tenably claimed to have been wrongly excluded or to have become available only after trial, the trier of the facts would have entertained a reasonable doubt about his guilt.

*Civil Procedure > Jurisdiction > General Overview*
*Civil Procedure > Judicial Officers > General Overview*
*Criminal Law & Procedure > Habeas Corpus > Procedural Default > Actual Innocence & Miscarriage of Justice > Miscarriage of Justice*

[HN6]The Fed.R.Crim.P. 11 requirement that the court "address the defendant personally" does not necessarily mean that the words must literally issue from the judge's lips. Instead, it means that the judge must insure that the defendant understands the possible penalties before his

plea is accepted. A formal violation of Rule 11 is cognizable on collateral attack only if it creates: (1) an error that is jurisdictional or constitutional; (2) a defect that results in a "miscarriage of justice;" (3) an omission inconsistent with the "rudimentary demands of fair procedure; or (4) extraordinary circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.

**COUNSEL:** Weston D. Bailey, petitioner, Pro se.

For respondents: Loren C. Meyers, Esquire, Chief of Appeals Division, Department of Justice, Wilmington, Delaware.

**JUDGES:** Sue L. Robinson, District Judge

**OPINION BY:** Sue L. Robinson

**OPINION**

**MEMORANDUM OPINION**

Dated: April 3, 1997

Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Petitioner Weston Bailey D. Bailey ("Bailey") seeks habeas corpus relief pursuant to 28 U.S.C. § 2254. Pursuant to the court's August 22, 1996 order (D.I. 17), both Bailey and respondents have filed briefs in support of their respective positions. (D.I. 20, 23) This matter is ripe for judicial action.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In April 1994 Bailey pleaded guilty before the Superior Court of the State of Delaware to charges of robbery in the first degree, possession of a deadly weapon during the commission of a felony and assault in the first degree. On May 27, 1994, he was sentenced to a term of sixteen years. (D.I. at 2) Bailey filed a motion for post-conviction relief pursuant to Superior Court Rule 61 on July 8, 1994, [*2] and supplemented this motion on September 30, 1994. The Superior Court denied the motion on October 18, 1994. (D.I. 4 at B-1, B-5) On December 22, 1994, petitioner appealed the Superior Court's denial of his Rule 61 motion to the Delaware Supreme Court. (D.I. 12, Appellant's Opening Brief) State prosecutors moved for summary affirmance of the Superior Court decision under Delaware Supreme Court Rule 25(a). (D.I. 12, Appellee's Motion to Affirm) On

January 30, 1995, the Delaware Supreme Court granted this motion. (D.I. 12, Order) This petition followed.

In his petition, Bailey sets forth three claims. Claim 1 asserts that Bailey's conviction is unlawful because during the judge's plea colloquy, the judge "never explained to Bailey the action or conduct on his part necessary to be guilty of the charges he plead guilty to." (D.I. 2 at 5) Claim 2 asserts that Bailey's conviction is unlawful because the judge "never asked Bailey had he been promised anything, threatened by anyone or forced to enter his plea of guilty because of [the] wishes of his lawyer or someone else or by some type of misconception." (D.I. 2 at 5) Claim 3 asserts that the judge's plea colloquy was further deficient [*3] because the judge failed to canvass the issues of the case and relied upon the statements of Bailey's lawyer in determining that the plea was voluntary. (D.I. 2 at 6)

On August 21, 1996, Bailey filed a motion to dismiss. (D.I. 16) On August 22, 1996, the court denied Bailey's motion and noted that claims 1 and 2 may be barred by procedural default since he failed to present them to the state courts. (D.I. 17) The court ordered Bailey to file a brief setting forth his arguments relative to the issue of procedural default bar, including a demonstration of either cause and prejudice or that a miscarriage of justice would result from the court's failure to consider his claims. (D.I. 17) The court also ordered respondents to file a brief in support of the position that the plea colloquy was sufficient under *Boykin v. Alabama*, 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969). (D.I. 17)

## III. DISCUSSION

### A. The Antiterrorism and Effective Death Penalty Act

Since this petition was filed, Congress passed the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132, 110 Stat. 1214. [HN1]This statute amends several of the provisions pertaining to [*4] federal habeas corpus relief. The amendments place time limits on petitions for relief from state court convictions, permit federal courts to deny relief on the merits despite failure to exhaust state remedies, and foreclose relief on grounds previously adjudicated in state court, unless such previous adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996). With regard to factual issues, the new provisions state that any factual determination made by a state court shall be presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e).

The Third Circuit has not ruled on whether the non-death penalty provisions of the AEDPA apply retroactively. *See, e.g., Berryman v. Morton,* 100 F.3d 1089, 1102-03 (3d Cir. 1996); *Meyers v. Gillis,* 93 F.3d 1147, 1149 n.1 (3d Cir. 1996). Other courts of appeal are split. The Second, [*5] Ninth, and Tenth Circuits have held that these provisions should not be applied to cases pending when the AEDPA was passed. *Boria v. Keane,* 90 F.3d 36, 38 (2d Cir. 1996); *Edens v. Hannigan,* 87 F.3d 1109, 1112 n.1 (10th Cir. 1996); *Jeffries v. Wood,* 103 F.3d 827 (9th Cir. 1996) (en banc). Three other circuit courts, however, have applied the amendments retroactively. *Lindh v. Murphy,* 96 F.3d 856 (7th Cir. 1996), *cert. granted,* 117 S. Ct. 726 (1997); *Hunter v. United States,* 101 F.3d 1565 (11th Cir. 1996) (en banc); *Drinkard v. Johnson,* 97 F.3d 751 (5th Cir. 1996), *cert. denied,* 137 L. Ed. 2d 315, 117 S. Ct. 1114 (1997). Because, in the case at bar, the outcome would be the same under either standard, the court finds that it is unnecessary, at this time, to take a position on this unsettled issue of law. For the purposes of this decision, the court's analysis will follow the old rules.

**B. Exhaustion Requirement**

[HN2]Before the court reviews petitioner's claims, it will ascertain whether petitioner has exhausted all available state remedies. 28 U.S.C. § 2254(b). [1] Comity is the rationale underlying the exhaustion requirement, which allows state courts [*6] the first opportunity to pass on alleged defects in the criminal proceedings leading to the conviction at issue. Recognizing that principles of federal-state comity must restrain unnecessary "federal intrusions into state criminal trials," *Engle v. Isaac,* 456 U.S. 107, 128, 71 L. Ed. 2d 783, 102 S. Ct. 1558 (1982), the United States Supreme Court has held that the exhaustion requirement must be "rigorously enforced." *Rose v. Lundy,* 455 U.S. 509, 518, 71 L. Ed. 2d 379, 102 S. Ct. 1198 (1982); *see also Santana v. Fenton,* 685 F.2d 71, 77 (3d Cir. 1982).

1 Except where otherwise noted, references to § 2254 are to the statute as it existed before passage of the AEDPA.

To exhaust state remedies, a petitioner must have raised before the highest state court the factual and legal premises of the claims for relief he asserts in the federal proceeding. *Chaussard v. Fulcomer,* 816 F.2d 925 (3d Cir. 1987); *Gibson v. Scheidemantel,* 805 F.2d 135, 138 (3d Cir. 1986). In a case where the court determines [*7] that the petitioner has not exhausted all state remedies, the court may also determine whether "recourse to state collateral review whose results have effectively been predetermined . . ." would justify review by the district court. *Castille v. Peoples,* 489 U.S. 346, 350, 103 L. Ed. 2d 380, 109 S. Ct. 1056 (1989).

In his habeas petition, Bailey raises three specific complaints. Claim 3 was presented to the state supreme court, thus exhausting state remedies. (D.I. 12, Appellant's Opening Brief at 1) Claims 1 and 2 were not presented to the state courts and are, therefore, barred by Delaware Criminal Rule 61(i)(2). (D.I. 17 at 2) For the reasons stated in the court's August 22, 1995 order, Bailey is excused from the exhaustion requirement as to these claims. (D.I. 17 at 2)

**C. Procedural Default for Claims 1 and 2**

Bailey's first two claims charge that the trial judge did not explain to him during the plea colloquy the nature of the offenses to which he was pleading guilty, and that the judge accepted the plea without establishing that petitioner knew the consequences of the plea and that the plea was not coerced. (D.I. 2 at PP12A and 12B) Because Bailey failed to raise these [*8] claims in his post-conviction relief motion and has consequently defaulted them in state court pursuant to an independent and adequate state procedural rule -- Criminal Rule 61(i)(2) --, [HN3]federal habeas review of the claims is barred unless petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in the fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750, 115 L. Ed. 2d 640, 111 S. Ct. 2546 (1991). The Supreme Court has held that "'cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him. . . ." *Id.,* 501 U.S. at 753, *citing Murray v. Carrier,* 477 U.S. 478, 488, 91 L. Ed. 2d 397, 106 S. Ct. 2639 (1986) (emphasis in original). To demonstrate cause for a procedural default, petitioner must show that "some objective factor external to the defense" precluded his compliance with the state procedural rules. *McCleskey v. Zant,* 499 U.S. 467, 493, 113 S. Ct. 2517, 111 S. Ct. 1454 (1991), *quoting Murray v. Carrier,* 477 U.S. 478, 488, 91 L. Ed. 2d 397, [*9] 106 S. Ct. 2639 (1986).

Bailey argues that cause for his procedural default and actual prejudice exists due to the ineffectiveness of

his defense attorney. (D.I. 20 at 4) Bailey specifically alleges that his trial counsel "intentionally deceived [him] prior to his entering a plea of guilty" for the three counts. (D.I. 20 at 4) He alleges that he "entered the plea of guilty on the promise of counsel; [sic] he would only receive a four (4) year sentence under supervision level 5 for the offenses committed." (D.I. 20 at 4-5) Bailey also points out that his trial counsel did not object to the prosecutor's recommendation that he be sentenced for fifteen years at supervision level 5. (D.I. 20 at 5)

The court is unpersuaded by Bailey's arguments. The procedural default issue relates to Bailey's failure to raise claims 1 and 2 in his state post-conviction motion. (D.I. 23 at 3) The performance of Bailey's defense counsel during the plea proceedings and at sentencing is not relevant to this issue. The alleged defectiveness of Bailey's attorney does not explain why Bailey failed to raise claims 1 and 2 in his state post-conviction motion. [2]

> 2   Bailey was not represented by counsel in the state post-conviction proceedings.

[*10] As Bailey notes, [HN4]ineffective assistance of counsel may constitute cause for a procedural default. *Murray v. Carrier, 477 U.S. 478, 488-489, 91 L. Ed. 2d 397, 106 S. Ct. 2639 (1986)*. However, this claim must itself be presented to the state courts as required by the exhaustion doctrine.   *Id.* at 488-499. Bailey failed to raise this claim in his state post-conviction motion and does not offer any explanation for this failure. Accordingly, this claim is procedurally barred from federal habeas review. [3] Since Bailey has offered no explanation why he failed to raise claims 1 and 2 in his state post-conviction motion, the court finds that he has failed to establish cause. Since Bailey has failed to establish cause, the court need not reach the question of whether he has shown any actual prejudice from the alleged violation of federal law. *Presnell v. Kemp, 835 F.2d 1567, 1582 n.29 (11th Cir. 1988)* (citations omitted).

> 3   The court, therefore, will not consider this claim as an independent ground for relief.

[*11] The court also finds that Bailey fails to establish that a "miscarriage of justice" would occur if these claims were not reviewed by this court. [HN5]"The miscarriage of justice exception is concerned with actual innocence as compared to legal innocence. . . ." *Sawyer v. Whitley, 505 U.S. 333, 339, 120 L. Ed. 2d 269, 112 S. Ct. 2514 (1992)*. "Actual innocence" requires "the petitioner to show that it is more likely than not that no reasonable juror would have convicted him." *Schlup v. Delo, 513 U.S. 298, 115 S. Ct. 851, 867, 130 L. Ed. 2d 808 (1995)*; *Sawyer, 505 U.S. at 340* ("A prototypical example of 'actual innocence' in a colloquial sense is the case where the State has convicted the wrong person of

the crime."). The petitioner must "show a fair probability that, in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after trial, the trier of the facts would have entertained a reasonable doubt about his guilt." *Kuhlmann v. Wilson, 477 U.S. 436, 455 n.17, 91 L. Ed. 2d 364, 106 S. Ct. 2616 (1986)* (internal [*12] quotations omitted). *See also Sawyer, 505 U.S. at 350* (petitioner must show by clear and convincing evidence that but for constitutional error . . . , no reasonable juror would have found him eligible for" the crime charged).

In the present case, Bailey's claims relating an involuntary guilty plea do not amount to claims of "actual innocence." Bailey's claims concern legal deficiencies during the plea colloquy which do not constitute an argument of "actual innocence." *See Stanley v. Lockhart, 941 F.2d 707, 709 (8th Cir. 1991)* (not addressing petitioner's allegations that his plea was defective in considering his actual innocence). Bailey expressly acknowledged his guilt during the plea colloquy. [4] (D.I. 4 at A8-9) In his memorandum in support of his habeas petition, Bailey does not argue that he is actually innocent. In his brief to the Supreme Court of the State of Delaware, Bailey does assert that he "seeks to withdraw his plea and take his case to trial and let his peers be his judge, because he went along for a ride and is not able to control the actions of others when they seek to commit criminal acts." (D.I. 4, Appellant's opening brief at 5) He also argued that "his [*13] lawyer mis-informed [sic] him about [the] criminal liabilities which influenced him to take this ill-fated plea to a crime he didn't commit." (D.I. 4, Appellant's opening brief at 8) Aside from these general arguments, Bailey does not appear to argue that he is "actually innocent" of the crimes for which he was convicted.

> 4   During the plea colloquy, the judge specifically asked Bailey whether he was actually guilty and Bailey affirmatively answered:
>
> > THE COURT: Are you entering these pleas of guilty to the charge of robbery in the first degree, possession of a deadly weapon during the commission of a felony, and assault first degree, because, in fact, you are guilty of these charges?
>
> THE DEFENDANT [Bailey]: Yes.
>
> (D.I. 4 at A-8-9)

Indeed, in stating that "he went along for a ride" and was "not able to control the actions of others when they seek to commit criminal acts," Bailey appears to admit that he was in the vehicle used the night of the robbery. Furthermore, in his motion for post-conviction [*14] relief before the Superior Court of the State of Delaware, Bailey stated "that [he] would have never taken such a plea . . . because of his limited role in the incident which did not include the actual robbery or weapon offense(s)." (D.I. 26, Respondent's motion to affirm at B-29) This plainly contradicts his statement to police that he stayed with his girlfriend the night of the robbery. (D.I. 26, Bailey's Statement to Police at 2)

The investigation report also does not provide any facts in Bailey's favor. In the report, Bailey's girlfriend stated that Bailey was involved in the robbery and not with her that night. (D.I. 26, Crime report at 7) Bailey's three co-conspirators also stated to police that Bailey was involved in the armed robbery. [5] (D.I. 26, Statement of Shavelle Washington at 1; Statement of Curtis Townsend at 3; Statement Bobby Collins at 2) The clerk of the tavern that was robbed also identified Bailey in a photographic line-up as the person holding the gun during the robbery. (D.I. 26, Crime report at 9)

> [5] Collins and Washington were convicted for the armed robbery after a jury trial in Superior Court in March 1994. (*See* D.I. 12, Respondents' motion to affirm at B-12) Townsend pled guilty to robbery and conspiracy in April 1994. The convictions of Collins and Washington were affirmed on direct appeal. *Collins v. State*, 1995 Del. LEXIS 101, No. 232,1994; 1995 WL 120655 (Del. Supr., March 10, 1995); *Washington v. State*, 1994 Del. LEXIS 395, No. 195,1994; 1994 WL 716044 (Del. Supr., Dec. 20, 1994).

[*15] Based on these facts and the fact that Bailey does not appear to argue that he is "actually innocent," the court finds that he has failed to establish that a fundamental miscarriage of justice would occur if his claims are not reviewed. Accordingly, the court finds that claims 1 and 2 are barred from federal habeas review as they are procedurally defaulted claims.

## D. Claim 3

Bailey's third claim is that the plea colloquy was defective because the trial judge "failed to canvass[] ... the issues of [the] case before him to determine [the] voluntariness of [the] plea...." (D.I. 2 at 6, P12C) More specifically, Bailey contends that the judge failed "to meet his responsibilities" by allowing defense counsel to ask most of the questions during the colloquy. [6] (D.I. 2 at 6, P12C) Bailey complains that the trial judge, (1) "didn't

ask him anything about was he promised anything, was his plea coerced, that he had a right to go to trial, if he still wished to and that the decision to plead guilty must be his own and not the wishes of anybody else or of his lawyer;" (2) "never made the determination" whether the plea was entered knowingly and voluntarily; and (3) "failed completely" [*16] to address the issues of "coercion, understanding of the accusation and knowledge of the direct consequences of the plea." (D.I. 4, Appellant's Opening Brief at 5-6)

> [6] The plea colloquy transcript reveals that Bailey's trial counsel, Mr. Callaway, questioned him as follows:
>
>> [MR. CALLAWAY:] Mr. Bailey, I show you this Plea Agreement and ask you if this is your signature.
>>
>> THE DEFENDANT: Yes.
>>
>> MR. CALLAWAY: Did you and I go over each and every paragraph of this form?
>>
>> THE DEFENDANT: Yes.
>>
>> MR. CALLAWAY: Mr. Bailey, I show you this Guilty Plea Form and ask you if this is your signature?
>>
>> THE DEFENDANT: Yes.
>>
>> MR. CALLAWAY: Did you and I go over each and every paragraph of that form?
>>
>> THE DEFENDANT: Yes.
>>
>> MR. CALLAWAY: And did you answer the questions in your own handwriting?
>>
>> THE DEFENDANT: Yes.
>>
>> MR. CALLAWAY: Mr. Bailey, have you had any alcohol, drugs or medication in the last 24 hours?
>>
>> THE DEFENDANT: No.
>>
>> MR. CALLAWAY: Mr. Bailey, it is your desire to enter guilty pleas to these three charges. Therefore, there will not be a trial. Therefore, you give up all the rights you would have at a trial and your right to appeal.

THE DEFENDANT: Yes.

MR. CALLAWAY: And have I explained the Court could impose up to 50 years incarceration on these charges?

THE DEFENDANT: Yes.

MR. CALLAWAY: Have I explained to you under the robbery charge the Court is required under the law to impose a 2-year minimum sentence?

THE DEFENDANT: Yes.

MR. CALLAWAY: And have I explained to you under the Delaware Statute with respect to the weapons charge that any sentence you receive would be a mandatory sentence; that the Statute also requires that a 2-year sentence must be imposed?

THE DEFENDANT: Yes.

MR. CALLAWAY: Are you presently on probation or parole to any court?

THE DEFENDANT: No.

MR. CALLAWAY: And have I explained to you the entry of a plea of guilty to this charge, which is a felony, would cause you to lose your right to be a juror, hold public office, and to own or possess a deadly weapon?

THE DEFENDANT: Yes; I understand.

Counsel thereafter handed the executed Plea Agreement and Guilty Form to the trial judge, who questioned petitioner as follows:

THE COURT: Mr. Bailey, do you think you have had adequate time to discuss this matter with Mr. Callaway?

THE DEFENDANT: Yes, sir.

THE COURT: Are you satisfied with the representation he has provided?

THE DEFENDANT: Yes, sir.

THE COURT: Are you entering these pleas of guilty to the charge of robbery in the first degree, possession of a deadly weapon during the commission of a felony, and assault first degree, because, in fact, you are guilty of these charges?

THE DEFENDANT: Yes.

THE COURT: All right. I will accept the pleas as they have been tendered.

(D.I. 4 at A6-A9)

[*17] According to Bailey, the trial judge himself is required personally to question the defendant and must expressly state, when the plea is accepted, that it is being entered knowingly and voluntarily. (D.I. 4 at 1-2) Bailey also argues that defense counsel's representations that his client understood the consequences of his plea and "conduct necessary to be guilty of charge does not relieve the Court of its responsibilities, to make sure Bailey 'possessed' an understanding of law in relation to the facts." (D.I. 4 at 2, citing *United States v. Vera*, 514 F.2d 102, 104 (5th Cir. 1975)). In support of his claim, Bailey directs the court to Delaware Criminal Rules 11(c) and (d), which state, in relevant part, that "the court must address the defendant personally ... and inform the defendant of, and determine that the defendant understands," *inter alia*: (1) the nature of the charges, the mandatory minimum penalty, if any, and the maximum possible penalty; (2) that the defendant has the right to plead not guilty and to be tried by a jury; (3) that by pleading guilty, the defendant waives his right to a trial; and (4) that the court "shall not accept" a guilty plea "without first, [*18] by addressing the defendant personally in open court, determining that the plea is voluntary . . . ."

In the present case, it is clear that this information was conveyed to Bailey at his plea colloquy. The nature of the charges were explained in the plea agreement, which Bailey indicated he had gone over with counsel; the trial judge repeated the charges in the colloquy, and asked Bailey if he was entering guilty pleas because he was in fact guilty. Bailey answered in the affirmative. Defense counsel asked Bailey to state whether he had explained to him the maximum penalty for all counts and minimum penalties for two of the counts. Bailey answered "yes." Defense counsel further stated to Bailey that because he desired to enter guilty pleas, "there will not be a trial. Therefore, you give up all the rights you would have at a trial and your right to appeal." Bailey again responded "yes." Finally, the trial judge satisfied

the requirement that voluntariness be ascertained by asking Bailey whether he had had adequate time to discuss his plea with counsel, and whether he was satisfied with counsel's representation. To each, Bailey answered in the affirmative.

The only question therefore [*19] is whether the identity of the conveyor rendered the colloquy constitutionally defective. The court finds that it did not. The purpose of the language in Rule 11 (c) and (d) is "to establish clearly of record the voluntariness of the plea by a response directly from the defendant," rather than from defense counsel. _United States v. Davis_, 470 F.2d 1128, 1130 (3d Cir. 1972). [HN6]The Rule 11 requirement that the court "address the defendant personally" "does not necessarily mean that the words must literally issue from the judge's lips." _United States v. Hamilton_, 568 F.2d 1302, 1306 (9th Cir. 1978) (interpreting parallel provision of Fed.R.Crim.P. 11) Instead, it means that the judge "must insure that the defendant understands the possible penalties before his plea is accepted."_Id._

A formal violation of Rule 11 is cognizable on collateral attack only if it creates: (1) an error that is jurisdictional or constitutional; (2) a defect that results in a "miscarriage of justice;" (3) an omission inconsistent with the "rudimentary demands of fair procedure;" or (4) "extraordinary circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." _United_ [*20] _States v. Timmreck_, 441 U.S. 780, 783, 60 L. Ed. 2d 634, 99 S. Ct. 2085 (1979).

In reviewing the record against these standards, the court concludes that, even if Rule 11 was violated, the alleged Rule 11 violations cannot in themselves command relief on collateral attack. Bailey's attorney specifically stated during the plea proceedings that "the total range of sentencing available to the sentencing judge would be a 4 year minimum to a 50 year period of incarceration at Level 5." (D.I. 4 at A-5) Bailey's attorney also asked Bailey: "And have I explained the Court could impose up to 50 years incarceration on these charges?" (D.I. 4 at A-7) Bailey answered that question in the affirmative. (D.I. 4 at A-7) Based on this record, the court concludes that the trial judge had sufficiently insured that Bailey was aware of the possible penalties before he entered his plea of guilty. The court finds that any violation that may have resulted because the judge did not personally ask specific questions are not cognizable on collateral attack given the standard stated in _Timmreck. Id._

## IV. CONCLUSION

For the reasons stated above, the court finds that Bailey has failed to establish [*21] cause or that a miscarriage of justice would occur if his procedurally defaulted claims are not reviewed. The court also concludes that any defect in the plea colloquy is not cognizable on collateral attack. Therefore, the court shall deny Bailey's motion for writ of habeas corpus. An order consistent with this memorandum opinion shall issue.

LEXSEE



Positive
As of: Nov 16, 2007

**JESSE L. SPENCER, Petitioner, v. ROBERT SNYDER, Warden, and ATTORNEY GENERAL OF THE STATE OF DELAWARE, Respondents.**

**Civil Action No. 00-898-SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**2002 U.S. Dist. LEXIS 14754**

**July 24, 2002, Decided**

**DISPOSITION:**    [*1]  Petitioner's application for a writ of habeas corpus dismissed.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Petitioner inmate, convicted of assault, robbery, burglary, kidnapping, and four counts of the possession of a deadly weapon during the commission of a felony, filed an application for a writ of habeas corpus pursuant to 28 U.S.C.S. § 2254.

**OVERVIEW:** The inmate did not file for a writ of certiorari with the United States Supreme Court so his conviction became final for purposes of the statute of limitations set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), codified at 28 U.S.C.S. § 2244(d)(1) on October 15, 1995, 90 days after the Delaware Supreme Court affirmed his conviction and sentence. He filed the habeas petition on October 13, 2000, so his petition was barred under the AEDPA's one-year limitations limitation period unless the statute was statutorily or equitably tolled. The court held that neither type of tolling applied as (1) statutory tolling did not apply where the one-year period had expired before the inmate ever filed his motion for postconviction relief; and (2) equitably tolling did not apply as the inmate failed to articulate any extraordinary circumstances that prevented him from filing his petition with the court in a timely manner. Last, the court would not issue a certificate of appealability as the court was persuaded that reasonable jurists would not debate the correctness of these conclusions.

**OUTCOME:** The inmate's application for a writ of habeas corpus was dismissed, and he was denied a certificate of appealability.

**CORE TERMS:** period of limitation, equitable tolling, postconviction, appealability, certificate, habeas petitions, habeas corpus, expiration, tolling, petitioner's conviction, petitioner filed, petitioner's application, time barred, direct review, constitutional right, untimely, expired, jurist, limitation period, federal habeas, prison officials, extraordinary circumstances, asserting, prisoner's, sentence, custody, mailing, tolling provision

**LexisNexis(R) Headnotes**

*Criminal Law & Procedure > Habeas Corpus > Procedure > Filing of Petition > Time Limitations > Accrual Period*
*Governments > Legislation > Statutes of Limitations > Time Limitations*
[HN1]See 28 U.S.C.S. § 2244(d)(1).

*Civil Procedure > U.S. Supreme Court Review > General Overview*
*Criminal Law & Procedure > Habeas Corpus > Procedure > Filing of Petition > Time Limitations > General Overview*
*Governments > Legislation > Statutes of Limitations > General Overview*
[HN2]The 90-day period in which a habeas petitioner could have filed a petition for review by the United

States Supreme Court is encompassed within the meaning of "the expiration of the time for seeking direct review," as provided in 28 U.S.C.S. § 2244(d)(1)(A).

*Civil Procedure > Parties > Self-Representation > General Overview*
*Criminal Law & Procedure > Habeas Corpus > Procedure > Filing of Petition > Pleadings*
*Criminal Law & Procedure > Habeas Corpus > Procedure > Filing of Petition > Time Limitations > Filing Date*
[HN3]A pro se prisoner's habeas petition, is deemed filed on the date he delivers it to prison officials for mailing to the district court, not on the date the district court dockets it.

*Criminal Law & Procedure > Habeas Corpus > Procedure > Filing of Petition > Time Limitations > Accrual Period*
*Criminal Law & Procedure > Habeas Corpus > Procedure > Filing of Petition > Time Limitations > Equitable Tolling*
[HN4]The one-year period set forth in 28 U.S.C.S. § 2244(d)(1) is subject to statutory and equitable tolling.

*Criminal Law & Procedure > Habeas Corpus > Procedure > Filing of Petition > Time Limitations > General Overview*
*Governments > Legislation > Statutes of Limitations > Tolling*
[HN5]See 28 U.S.C.S. § 2244(d)(2).

*Criminal Law & Procedure > Habeas Corpus > Procedure > Filing of Petition > Time Limitations > General Overview*
*Governments > Legislation > Statutes of Limitations > Tolling*
[HN6]An application for postconviction relief filed after the expiration of the one-year period set forth in 28 U.S.C.S. § 2244 (d)(1) has no tolling effect.

*Criminal Law & Procedure > Habeas Corpus > Procedure > Filing of Petition > Time Limitations > Equitable Tolling*
*Governments > Legislation > Statutes of Limitations > Time Limitations*
*Governments > Legislation > Statutes of Limitations > Tolling*
[HN7]The one-year period of limitation set forth in 28 U.S.C.S. § 2244(d)(1) may be equitably tolled.

*Governments > Legislation > Statutes of Limitations > Tolling*
[HN8]The doctrine of equitable tolling applies only when the principles of equity would make the rigid application of a limitation period unfair. Generally, this will occur when the petitioner has in some extraordinary way been prevented from asserting his or her rights. The petitioner must show that he or she exercised reasonable diligence in investigating and bringing the claims. Mere excusable neglect is not sufficient. In other words, equitable tolling may be appropriate if (1) the defendant has actively misled the plaintiff, (2) if the plaintiff has in some extraordinary way been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum.

*Criminal Law & Procedure > Habeas Corpus > Appeals > Certificate of Appealability*
*Criminal Law & Procedure > Habeas Corpus > Cognizable Issues > Threshold Requirements*
[HN9]A federal court on habeas review may issue a certificate of appealability only if petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C.S. § 2253(c)(2).

*Criminal Law & Procedure > Habeas Corpus > Appeals > Certificate of Appealability*
[HN10]When a federal court dismisses a habeas petition on procedural grounds without reaching the underlying constitutional claims, in order to obtain a certificate of appealability, the petitioner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist can not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.

**COUNSEL:** Jesse L. Spencer, Petitioner, Pro se, Delaware Correctional Center, Smyrna, Delaware.

Loren C. Meyers, Esquire, Chief of Appeals Division, Delaware Department of Justice, Wilmington, Delaware, Counsel for Respondents.

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINION BY:** Sue L. Robinson

**OPINION**

**MEMORANDUM OPINION**

Dated: July 24, 2002

Wilmington, Delaware

**ROBINSON, Chief Judge**

**I. INTRODUCTION**

Petitioner Jesse L. Spencer is a state inmate in custody at the Delaware Correctional Center in Smyrna, Delaware. Currently before the court is petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.I. 2) For the reasons that follow, the court concludes that petitioner's application is time barred by the one-year period of limitation prescribed in 28 U.S.C. § 2244(d)(1). Accordingly, the court will dismiss the petition as untimely.

**II. BACKGROUND**

Following a jury trial in the Delaware Superior Court, petitioner was convicted of assault, robbery, burglary, kidnaping, and four counts of possession of a [*2] deadly weapon during the commission of a felony. The Superior Court sentenced petitioner on September 22, 1995, to 103 years imprisonment, suspended after 100 years for decreasing levels of supervision. On direct appeal, the Delaware Supreme Court affirmed. *Spencer v. State*, 1996 Del. LEXIS 248, No. 417, 1995, 1996 WL 415919 (Del. July 17, 1996).

Three years later, on July 16, 1999, petitioner filed in the Superior Court a motion for postconviction relief pursuant to Rule 61 of the Superior Court Rules of Criminal Procedure. The Superior Court summarily dismissed the motion. *State v. Spencer*, 1999 Del. Super. LEXIS 357, No. 9402009418, 1999 WL 743314 (Del. Super. Ct. Aug. 3, 1999). The Delaware Supreme Court dismissed petitioner's postconviction appeal as untimely. *Spencer v. State*, 741 A.2d 17, No. 407, 1999, 1999 WL 971069 (Del. Oct. 4, 1999).

Petitioner's application for federal habeas relief is now before the court.

**III. DISCUSSION**

**A. One-Year Period of Limitation**

In the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress amended the federal habeas statute by prescribing a one-year period of limitation for the filing of habeas petitions by state [*3] prisoners. *Stokes v. District Attorney of County of Philadel-phia*, 247 F.3d 539, 541 (3d Cir.), *cert. denied*, 534 U.S. 959, 151 L. Ed. 2d 276, 122 S. Ct. 364 (2001). Effective April 24, 1996, the AEDPA provides:

> [HN1](1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of --
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review . . .

28 U.S.C. § 2244(d)(1).

As described above, the Delaware Supreme Court affirmed petitioner's conviction and sentence on July 17, 1996. Petitioner was then allowed ninety days in which to file a petition for a writ of certiorari with the United States Supreme Court. *See* Sup. Ct. R. 13.1. Although petitioner did not seek review from the United States Supreme Court, [HN2]the ninety-day period in which he could have filed such a petition is encompassed within the meaning of "the expiration of the time for seeking [direct] review," as provided in § 2244(d)(1)(A). [*4] *See Kapral v. United States*, 166 F.3d 565, 576 (3d Cir. 1999) (holding that on direct review, the limitation period begins to run at the expiration of the time for seeking review in the United States Supreme Court). Therefore, petitioner's conviction became final on October 15, 1996, ninety days after the Delaware Supreme Court affirmed his conviction and sentence.

The court's docket reflects that the current petition was filed on October 13, 2000. (D.I. 2) [HN3]A pro se prisoner's habeas petition, however, is deemed filed on the date he delivers it to prison officials for mailing to the district court, not on the date the district court dockets it. *Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998). Petitioner has provided the court with no documentation establishing the date he delivered his petition to prison officials for mailing. The petition itself, however, is dated September 29, 2000. (D.I. 2) In the absence of proof respecting the date of delivery, the court deems the petition filed on September 29, 2000. *See* Murphy v. Snyder, Civ. A. No. 98-415-JJF, at 4 (D. Del. Mar. 8, 1999).

In short, the one-year period began running when petitioner's [*5] conviction became final on October 15, 1996. His habeas petition was filed nearly four years later on September 29, 2000. That, however, does not necessarily require dismissal of the petition as untimely, because [HN4]the one-year period is subject to statutory and equitable tolling. *See Jones v. Morton, 195 F.3d 153, 158 (3d Cir. 1999).*

**B. Statutory Tolling**

The AEDPA provides for statutory tolling of the one-year period of limitation as follows:

> [HN5]The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2).

Here, petitioner filed a motion for postconviction relief in the Superior Court on July 16, 1999. The one-year period of limitation, however, expired on October 15, 1997, one year after his conviction became final. Petitioner's motion for postconviction relief, filed long after the one-year period expired, has no tolling effect in this matter. *See Fisher v. Gibson, 262 F.3d 1135, 1142-43 (10th Cir. 2001)* [*6] (stating that [HN6]application for postconviction relief filed after the expiration of the one-year period has no tolling effect), *cert. denied, 152 L. Ed. 2d 649, 122 S. Ct. 1789 (2002); Collingwood v. Snyder, 2002 U.S. Dist. LEXIS 12591,* Civ. A. No. 00-783- SLR, 2002 WL 1446702, *3 (D. Del. June 28, 2002) (same).

In sum, petitioner filed his motion for postconviction relief after the one-year period of limitation had expired. The court thus concludes that the statutory tolling provision does not apply.

**C. Equitable Tolling**

Additionally, [HN7]the one-year period of limitation may be equitably tolled. *Fahy v. Horn, 240 F.3d 239, 244 (3d Cir.), cert. denied, 534 U.S. 944, 151 L. Ed. 2d 241, 122 S. Ct. 323 (2001); Jones, 195 F.3d at 159; Miller v. New Jersey State Dep't of Corr., 145 F.3d 616, 618 (3d Cir. 1998).* [HN8]The doctrine of equitable tolling applies

> only when the principles of equity would make the rigid application of a limitation period unfair. Generally, this will occur when the petitioner has in some

extraordinary way been prevented from asserting his or her rights. The petitioner must show that he or she exercised [*7] reasonable diligence in investigating and bringing [the] claims. Mere excusable neglect is not sufficient.

*Miller, 145 F.3d at 618-19* (citations omitted). In other words, equitable tolling "may be appropriate if (1) the defendant has actively misled the plaintiff, (2) if the plaintiff has 'in some extraordinary way' been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." *Jones, 195 F.3d at 159* (quoting *United States v. Midgley, 142 F.3d 174, 179 (3d Cir. 1998)).*

In the instant case, petitioner has failed to articulate any extraordinary circumstances that prevented him from filing his petition with this court in a timely manner. Indeed, he has failed to offer any explanation for the delay, and even acknowledges that he "has not filed his petition within the statutory provision of § 2244(d)(1)." (D.I. 18, P5) Moreover, the court has independently reviewed the record, and can discern no extraordinary circumstances that warrant applying equitable tolling. Accordingly, the court will dismiss the petition as time barred.

**IV. CERTIFICATE OF APPEALABILITY**

[*8] Finally, the court must determine whether a certificate of appealability should issue. *See* Third Circuit Local Appellate Rule 22.2. [HN9]The court may issue a certificate of appealability only if petitioner "has made a substantial showing of the denial of a constitutional right." *28 U.S.C. § 2253(c)(2).*

[HN10]When a federal court dismisses a habeas petition on procedural grounds without reaching the underlying constitutional claims, the petitioner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack v. McDaniel, 529 U.S. 473, 484, 146 L. Ed. 2d 542, 120 S. Ct. 1595 (2000).* "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

As discussed above, the court has concluded that the current habeas petition is time barred, and that neither the statutory tolling [*9] provision nor the doctrine of equitable tolling applies. The court is persuaded that reasonable jurists would not debate the correctness of these conclusions. Petitioner, therefore, has failed to make a

substantial showing of the denial of a constitutional right, and a certificate of appealability is not warranted.

## V. CONCLUSION

For the reasons stated, the court will dismiss petitioner's application for a writ of habeas corpus, and will not issue a certificate of appealability. An appropriate order shall issue.

## ORDER

At Wilmington, this 24th day of July, 2002, consistent with the memorandum opinion issued this same day;

IT IS HEREBY ORDERED that:

1. Petitioner Jesse L. Spencer's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (D.I. 2) is dismissed, and the relief requested therein is denied.

2. The court declines to issue a certificate of appealability for failure to satisfy the standard set forth in 28 U.S.C. § 2253(c)(2).

Sue L. Robinson

United States District Judge

LEXSEE



Cited
As of: Nov 16, 2007

**KEVIN A. THOMAS, Petitioner, v. ROBERT W. SNYDER, Warden, and ATTORNEY GENERAL OF THE STATE OF DELAWARE, Respondents.**

**Civil Action No. 98-597-GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**2001 U.S. Dist. LEXIS 19969**

**November 28, 2001, Decided**

**DISPOSITION:**    [*1] Thomas' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 DISMISSED, and relief requested therein DENIED. Thomas' letter dated April 16, 2000, requesting appointment of counsel, construed as a motion for appointment of counsel, and so construed, DENIED as moot.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Petitioner was convicted of first degree murder and possession of a deadly weapon during the commission of a felony in state court and was sentenced to life imprisonment. Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C.S. § 2254. Respondent State officials moved to dismiss the petition as time-barred.

**OVERVIEW:** Petitioner's claim for federal habeas relief was subject to the time limitation set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) because his conviction became final well before the AEDPA's enactment. Following the enactment of the AEDPA, 510 days lapsed during which petitioner had no post-conviction proceedings pending for purposes of 28 U.S.C. § 2244(d)(2). That period of time, well in excess of one year, was to be counted. Thus, the court concluded that while the statutory tolling provision applied to certain portions of time since the enactment of the AEDPA, it did not render the habeas petition timely filed. Moreover, the court did not discern any extraordinary circumstance that warranted applying the doctrine of equitable tolling given that petitioner had failed to offer any explanation for the delay in filing the habeas petition. Petitioner's letter, which the court construed as a motion for appointment of counsel, was denied as moot given the determination to dismiss the petition as untimely. Finally, the court declined to issue a certificate of appealability.

**OUTCOME:** The petition for a writ of habeas corpus was dismissed.

**CORE TERMS:** period of limitation, habeas petitions, post-conviction, period of time, tolling, tolled, constitutional right, equitable tolling, appointment of counsel, appealability, certificate, counted, prison, habeas corpus, limitation period, direct review, properly filed, untimely, summarily, convictions became final, state prisoners, expiration, convicted, sentence, mailing, concede, murder, weapon, unfair, jurist

**LexisNexis(R) Headnotes**

*Criminal Law & Procedure > Habeas Corpus > Procedure > Filing of Petition > Time Limitations > Antiterrorism & Effective Death Penalty Act*
*Governments > Legislation > Statutes of Limitations > Time Limitations*
[HN1]In the Antiterrorism and Effective Death Penalty Act of 1996, Congress amended the federal habeas statute by prescribing a one-year period of limitation for the filing of 28 U.S.C.S. § 2254 habeas petitions by state prisoners.

*Criminal Law & Procedure > Habeas Corpus > Procedure > Filing of Petition > Time Limitations > Accrual Period*
*Governments > Legislation > Statutes of Limitations > Time Limitations*
[HN2]See 28 U.S.C.S. § 2244(d)(1)(A).

*Criminal Law & Procedure > Habeas Corpus > Review > Antiterrorism & Effective Death Penalty Act*
*Governments > Legislation > Effect & Operation > Retrospective Operation*
*Governments > Legislation > Statutes of Limitations > Time Limitations*
[HN3]In order to avoid any impermissible retroactive application of the one-year period of limitation, state prisoners whose convictions became final prior to the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 were allowed to file their 28 U.S.C.S. § 2254 petitions no later than April 23, 1997.

*Civil Procedure > U.S. Supreme Court Review > General Overview*
*Criminal Law & Procedure > Habeas Corpus > Procedure > Filing of Petition > Time Limitations > General Overview*
*Governments > Legislation > Statutes of Limitations > General Overview*
[HN4]A defendant is allowed 90 days in which to file a petition for a writ of certiorari with the United States Supreme Court after his judgment of conviction in state court becomes final. Sup. Ct. R. 13. When a defendant does not file a petition with the United States Supreme Court, the 90-day period in which he could have filed such a petition is encompassed within the meaning of the conclusion of direct review or the expiration of the time for seeking such review, as set forth in 28 U.S.C.S. § 2244(d)(1)(A).

*Criminal Law & Procedure > Habeas Corpus > Procedure > Filing of Petition > Time Limitations > Equitable Tolling*
*Governments > Legislation > Statutes of Limitations > General Overview*
[HN5] 28 U.S.C.S. § 2244(d)'s period of limitation may be either statutorily or equitably tolled.

*Criminal Law & Procedure > Habeas Corpus > Procedure > Filing of Petition > Time Limitations > General Overview*
*Governments > Legislation > Statutes of Limitations > General Overview*

[HN6]See 28 U.S.C.S. § 2244(d)(2).

*Criminal Law & Procedure > Habeas Corpus > Procedure > Filing of Petition > Time Limitations > General Overview*
[HN7]Only a "properly filed application" for post-conviction review tolls the one-year period under 28 U.S.C.S. § 2244(d)(2).

*Criminal Law & Procedure > Habeas Corpus > Procedural Default > General Overview*
[HN8]Under Del. Super. Ct. R. Crim. P. 61, any ground for relief that was not asserted in a prior postconviction proceeding is thereafter barred. Del. Super. Ct. R. Crim. P. 61(i)(2). This procedural bar, however, is inapplicable where a motion raises a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction. Del. Super. Ct. R. Crim. P. 61(i)(5).

*Civil Procedure > U.S. Supreme Court Review > General Overview*
*Criminal Law & Procedure > Habeas Corpus > Procedure > Filing of Petition > Time Limitations > General Overview*
*Governments > Legislation > Statutes of Limitations > Time Limitations*
[HN9]On direct review, the 90-day period set forth in Sup. Ct. R. 13 is excluded from the one-year period of limitation of 28 U.S.C.S. § 2244(d)(1). In post-conviction proceedings, however, the time during which a state prisoner may file a petition in the United States Supreme Court does not toll the one-year period, and the 90-day period is counted.

*Criminal Law & Procedure > Habeas Corpus > Procedure > Filing of Petition > Time Limitations > Equitable Tolling*
*Governments > Legislation > Statutes of Limitations > Time Limitations*
[HN10]In the context of a federal habeas proceeding, the doctrine of equitable tolling applies only when the principles of equity would make the rigid application of a limitation period unfair. Generally, this will occur when the petitioner has in some extraordinary way been prevented from asserting his or her rights. The petitioner must show that he or she exercised reasonable diligence in investigating and bringing the claims. Mere excusable neglect is not sufficient. In other words, equitable tolling

may be appropriate if (1) the defendant has actively misled the plaintiff, (2) the plaintiff has in some extraordinary way been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum.

*Constitutional Law > Bill of Rights > Fundamental Rights > Criminal Process > Assistance of Counsel*
*Criminal Law & Procedure > Counsel > Right to Counsel > General Overview*
*Criminal Law & Procedure > Habeas Corpus > Procedure > Appointment of Counsel*
[HN11]The Sixth Amendment right to counsel does not extend to habeas proceedings.

*Criminal Law & Procedure > Habeas Corpus > Appeals > Certificate of Appealability*
*Criminal Law & Procedure > Habeas Corpus > Cognizable Issues > Threshold Requirements*
[HN12]The court may issue a certificate of appealability only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C.S. § 2253(c)(2).

*Criminal Law & Procedure > Habeas Corpus > Appeals > Certificate of Appealability*
[HN13]When the court denies a habeas petition on procedural grounds without reaching the underlying constitutional claim, to obtain a certificate of appealability the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.

**COUNSEL:** KEVIN A. THOMAS, petitioner, Pro se, Smyrna, DE.

For ROBERT W. SNYDER, ATTORNEY GENERAL OF THE STATE OF DELAWARE, respondents: Thomas E. Brown, Department of Justice, Wilmington, DE.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Gregory M. Sleet

**OPINION**

**MEMORANDUM AND ORDER**

Kevin A. Thomas was convicted of first degree murder and possession of a deadly weapon during the commission of a felony. He is presently incarcerated in the Delaware Correctional Center in Smyrna, Delaware, where he is serving a sentence of life imprisonment. Thomas has filed with this court a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. As explained below, the court will dismiss Thomas' petition as time barred by the one-year period of limitation prescribed in 28 U.S.C. § 2244(d).

**I. BACKGROUND**

On June 28, 1993, following [*2] a jury trial in the Delaware Superior Court, Kevin A. Thomas was convicted of first degree murder and possession of a deadly weapon during the commission of a felony. The evidence at trial demonstrated that on September 13, 1992, Thomas shot David Turner in the face and killed him. Thomas was seventeen years old at the time. He was sentenced to life in prison without parole on the murder conviction and to a consecutive sentence of five years in prison on the weapons conviction. The Delaware Supreme Court affirmed Thomas' conviction and sentence on September 21, 1994.

On December 18, 1996, Thomas filed in state court a motion for post-conviction relief pursuant to Rule 61 of the Delaware Superior Court Criminal Rules. The trial court summarily dismissed Thomas' Rule 61 motion on December 23, 1996. Thomas appealed to the Delaware Supreme Court. His subsequent motion to withdraw the appeal was granted on March 11, 1997. Thomas filed a second Rule 61 motion for post-conviction relief on March 27, 1997, which was summarily dismissed on May 9, 1997. Again, Thomas appealed to the Delaware Supreme Court. The Court affirmed the order of dismissal on November 24, 1997.

Thomas has now filed [*3] with this court the current petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition Thomas articulates four separate grounds for relief: (1) The searches of his residence and car were in violation of the Fourth Amendment, and all evidence seized from these searches should have been suppressed; (2) The trial court erred in admitting identification testimony that was the result of an impermissibly suggestive photographic identification procedure; (3) The trial court violated his constitutional right to due process by giving a supplemental jury instruction pursuant to *Allen v. United States*, 164 U.S. 492, 41 L. Ed. 528, 17 S. Ct. 154 (1896); and (4) His constitutional rights were violated when police questioned him without a parent or legal guardian present.

2001 U.S. Dist. LEXIS 19969, *

The respondents argue that the petition is subject to a one-year period of limitation that expired before Thomas filed it. Thus, they request that the court dismiss the petition as time barred.

## II. DISCUSSION

### A. One-Year Period of Limitation

[HN1]In the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress amended the federal habeas statute [*4] by prescribing a one-year period of limitation for the filing of § 2254 habeas petitions by state prisoners. *Stokes v. District Attorney of the County of Philadelphia*, 247 F.3d 539, 541 (3d Cir. 2001). Effective April 24, 1996, the AEDPA provides:

> [HN2](1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of --
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. . . .

28 U.S.C. § 2244(d)(1). [HN3]In order to avoid any impermissible retroactive application of the one-year period of limitation, state prisoners whose convictions became final prior to the enactment of the AEDPA were allowed to file their § 2254 petitions no later than April 23, 1997. *See Burns v. Morton*, 134 F.3d 109, 111 (3d Cir. 1998)(prohibiting dismissal of petitions filed on or before April 23, 1997, as untimely under § 2244(d)(1)(A)).

Thomas' conviction became final prior to the enactment of the AEDPA. He [*5] was convicted on June 28, 1993. The Delaware Supreme Court affirmed the judgment of conviction on September 21, 1994. [HN4]Thomas was then allowed ninety days in which to file a petition for a writ of certiorari with the United States Supreme Court. *See* Supreme Court Rule 13. Although Thomas did not file a petition with the United

States Supreme Court, the ninety-day period in which he could have filed such a petition is encompassed within the meaning of "the conclusion of direct review or the expiration of the time for seeking such review," as set forth in § 2244(d)(1)(A). *See Kapral v. United States*, 166 F.3d 565, 576 (3d Cir. 1999)(holding that on direct review, the limitation period of § 2244(d)(1)(A) begins to run at the expiration of the time for seeking review in the United States Supreme Court). Therefore, Thomas' conviction became final on December 20, 1994, ninety days after the Delaware Supreme Court affirmed his conviction, and well before the enactment of the AEDPA on April 24, 1996. Thus, he could have filed a timely habeas petition with this court not later than April 23, 1997. *See Burns*, 134 F.3d at 111.

Ascertaining the precise date [*6] Thomas filed his habeas petition with the court is somewhat problematic. The court's docket reflects that the petition was filed on October 21, 1998, the date the clerk's office received his petition and filing fee. A pro se prisoner's habeas petition, however, is considered filed on the date he delivers it to prison officials for mailing to the district court, not on the date the court receives it. *Id.* at 113. Thomas has provided the court with no documentation establishing the date he delivered his petition to prison officials for mailing. The petition itself, however, is dated August 10, 1998. The respondents maintain that the filing date is October 8, 1998, but they provide no documentation to support this conclusion. Under these circumstances, the court will extend Thomas every benefit of the doubt and will consider his habeas petition filed on August 10, 1998, the earliest possible date he could have delivered it to prison officials for mailing.

Obviously Thomas' habeas petition was filed well beyond the April 23, 1997 deadline. That, however, does not end the inquiry because [HN5]§ 2244(d)'s period of limitation may be either statutorily or equitably tolled. [*7] *See Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999).

### B. Statutory Tolling

The AEDPA provides for statutory tolling of the one-year period of limitation:

> [HN6]The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2).

Thomas filed in state court a Rule 61 motion for post-conviction relief on December 18, 1996, which the Superior Court summarily dismissed on December 23, 1996. As previously noted, Thomas appealed from the order of dismissal. His subsequent motion to withdraw the appeal was granted on March 11, 1997. The respondents concede, and correctly so, that the filing of this motion for post-conviction relief tolled the period of limitation. Thus, the period of time from December 18, 1996, through March 11, 1997, does not count toward the one-year period of limitation. [1]

> 1    The court notes that the one-year period is tolled during the time between the Superior Court's dismissal of Thomas' Rule 61 motion and his timely appeal to the Delaware Supreme Court. *See* *Swartz v. Meyers*, 204 F.3d 417, 420 (3d Cir. 2000).

[*8] Thomas filed a second Rule 61 motion for post-conviction relief in state court on March 27, 1997, which was summarily dismissed on May 9, 1997. The Delaware Supreme Court affirmed the dismissal on November 24, 1997. Again, the respondents concede that the filing of the second Rule 61 motion tolled the period of limitation. [2] Thus, the period of time from March 27, 1997, through November 24, 1997, is excluded from the one-year limitation period. [3]

> 2    [HN7]Only a "properly filed application" for post-conviction review tolls the one-year period under § 2244(d)(2). Whether Thomas' second Rule 61 motion constitutes a "properly filed application" is subject to debate. [HN8]Under Rule 61, "any ground for relief that was not asserted in a prior postconviction proceeding . . . is thereafter barred." Super. Ct. R. Crim. P., Rule 61(i)(2). This procedural bar, however, is inapplicable where a motion raises "a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction." *Id.*, Rule 61(i)(5). The court need not, and does not, address whether Thomas' second Rule 61 motion was a "properly filed application" because the respondents concede that the one-year period was tolled while the second Rule 61 motion was pending. Regardless, as discussed herein, Thomas' habeas petition is untimely.

[*9]

> 3    Thomas could have filed, but did not file, a petition for a writ of certiorari with the United States Supreme Court within ninety days of the Delaware Supreme Court's order. *See* Supreme Court Rule 13. [HN9]As explained above, on di-

rect review that ninety-day period is excluded from the one-year period of limitation. *See* *Kapral*, 166 F.3d at 576. In post-conviction proceedings, however, the time during which a state prisoner may file a petition in the United States Supreme Court does *not* toll the one-year period, and the ninety-day period is counted. *Stokes*, 247 F.3d at 543.

Nonetheless, since the date of the enactment of AEDPA, more than one year has passed during which statutory tolling does not apply. First, from April 24, 1996, through December 17, 1996, a period of 238 days, no post-conviction proceedings were pending, and those 238 days are included as part of the one-year period. In addition, from March 12, 1997, through March 26, 1997, no post-conviction relief proceedings were pending, and those fourteen days must be counted. Finally, from November 25, 1997, through [*10] August 9, 1998, a period of 258 days, no motion for post-conviction relief was pending, and those 258 days must be counted.

In sum, following the enactment of the AEDPA, 510 days lapsed during which Thomas had no post-conviction proceedings pending for purposes of § 2244(d)(2). This period of time, well in excess of one year, must be counted. The court thus concludes that while the statutory tolling provision applies to certain portions of time since the enactment of the AEDPA, it does not render Thomas' habeas petition timely filed.

## C. Equitable Tolling

Additionally, the one-year period of limitation prescribed in § 2244(d) may be subject to equitable tolling. *Fahy v. Horn*, 240 F.3d 239, 244 (3d Cir. 2001); *Jones*, 195 F.3d at 159; *Miller v. New Jersey State Dep't of Corrections*, 145 F.3d 616, 618 (3d Cir. 1998). [HN10]The doctrine of equitable tolling applies:

> only when the principles of equity would make the rigid application of a limitation period unfair. Generally, this will occur when the petitioner has in some extraordinary way been prevented from asserting his or her rights. The petitioner must show that he or she [*11] exercised reasonable diligence in investigating and bringing [the] claims. Mere excusable neglect is not sufficient.

*Miller*, 145 F.3d at 618-19 (citations omitted). In other words, equitable tolling "may be appropriate if (1) the defendant has actively misled the plaintiff, (2) the plaintiff has 'in some extraordinary way' been prevented from asserting his rights, or (3) if the plaintiff has timely as-

serted his rights mistakenly in the wrong forum." *Jones, 195 F.3d at 159, quoting United States v. Midgley, 142 F.3d 174, 179 (3d Cir. 1998).*

In the instant case, Thomas argues that the AEDPA's one-year period of limitation is at odds with the three-year period allowed for filing a Rule 61 motion for post-conviction relief. He contends that because Delaware allows three years in which to file a Rule 61 motion, and petitioners are required to exhaust state remedies before filing habeas petitions in federal court, it is unfair to apply the AEDPA's one-year period of limitation, rather than Delaware's three-year period.

Although Thomas is correct that Delaware generally allows three years in which to file a Rule 61 motion, [*12] *see* Super. Ct. R. Crim. P., Rule 61(i)(1), the court is unimpressed by his equitable tolling argument. As explained above, the court has applied *§ 2244(d)(2)*'s tolling provision to exclude the periods of time during which his two post-conviction proceedings were pending before the state courts. These periods of time do not count against Thomas. There is nothing unfair or inequitable in applying the AEDPA's one-year period of limitation to petitioners who wait more than a year before filing a habeas petition in federal court, even if the Delaware rule permits a longer period of time in which to file Rule 61 motions.

More important, Thomas has failed to articulate any extraordinary circumstances that prevented him from filing his habeas petition with this court in a timely manner. Indeed, he has failed to offer *any* explanation for the delay. He has not provided the court with any reason why, after the AEDPA was enacted, he waited until December 18, 1996, to file his first Rule 61 motion. He has not explained why, after his second Rule 61 proceedings were completed on November 24, 1997, he waited until August 10, 1998, to file his habeas petition with this court.

In short, the [*13] court cannot discern any extraordinary circumstances that warrant applying the doctrine of equitable tolling. Thomas' habeas petition will be dismissed as untimely.

**D. Motion for Appointment of Counsel**

In a letter to the court dated April 16, 2000, Thomas inquired respecting appointment of counsel in this matter. The court construes this letter as a motion for appointment of counsel. [HN11]The *Sixth Amendment* right to counsel does not extend to habeas proceedings. *See Pennsylvania v. Finley, 481 U.S. 551, 555, 95 L. Ed. 2d 539, 107 S. Ct. 1990 (1987); United States v. Roberson, 194 F.3d 408, 415 n.5 (3d Cir. 1999).* Additionally, the court has determined that Thomas' habeas petition will be dismissed as untimely. Accordingly,

Thomas' letter dated April 16, 2000, construed as a motion for appointment of counsel, will be denied as moot.

**III. CERTIFICATE OF APPEALABILITY**

Finally, the court must determine whether a certificate of appealability should issue. *See* Third Circuit Local Appellate Rule 22.2. [HN12]The court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional [*14] right." *28 U.S.C. § 2253(c)(2).*

[HN13]When the court denies a habeas petition on procedural grounds without reaching the underlying constitutional claim, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack v. McDaniel, 529 U.S. 473, 484, 146 L. Ed. 2d 542, 120 S. Ct. 1595 (2000).* "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

For the reasons discussed above, Thomas' habeas petition is barred by the one-year period of limitation. The court cannot conclude that the period should be statutorily or equitably tolled to render the petition timely. The court is convinced that reasonable jurists would not debate otherwise. Thomas therefore cannot make a substantial showing of the denial of a constitutional right, and a certificate of appealability [*15] will not issue.

**IV. CONCLUSION**

For the foregoing reasons, IT IS HEREBY ORDERED THAT:

> 1. Thomas' petition for a writ of habeas corpus pursuant to *28 U.S.C. § 2254* is DISMISSED, and the relief requested therein is DENIED.
>
> 2. Thomas' letter dated April 16, 2000, requesting appointment of counsel, is construed as a motion for appointment of counsel, and so construed, is DENIED as moot.
>
> 3. The court declines to issue a certificate of appealability for failure to satisfy the standard set forth in *28 U.S.C. § 2253(c)(2).*

IT IS SO ORDERED.

2001 U.S. Dist. LEXIS 19969, *

Dated: November 28, 2001                    UNITED STATES DISTRICT JUDGE

Gregory M. Sleet

LEXSEE



Analysis
As of: Nov 16, 2007

**DEVEARL L. BACON, Petitioner, v. THOMAS CARROLL, Warden, and JOSEPH R. BIDEN, III, Attorney General of the State of Delaware, Respondents. [1]**

1 Attorney General Joseph R. Biden, III assumed office in January, 2007, replacing former Attorney General Carl C. Danberg, an original party to this case. See Fed. R. Civ. P. 25(d)(1).

**Civil Action No. 06-519-JJF**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**2007 U.S. Dist. LEXIS 68877**

**September 17, 2007, Decided**

**PRIOR HISTORY:** Bacon v. Delaware, 127 S. Ct. 591, 166 L. Ed. 2d 439, 2006 U.S. LEXIS 8706 (U.S., 2006)

**CORE TERMS:** limitations period, equitable tolling, habeas petitions, appealability, time-barred, certificate, trial transcripts, direct appeal, period of limitations, ineffective, asserting, diligence, robbery, tolling, toll, liquor store, counts of possession, ineffective assistance, equitably tolled, expiration, debatable, sentence, prisoner, joinder, trigger, prison, jurists, attempted robbery, deadly weapon, conviction became final

**COUNSEL:** [*1] Devearl L. Bacon, Pro Se Petitioner.

Elizabeth R. McFarlan, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Respondents.

**JUDGES:** Joseph J. Farnan, Jr., UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Joseph J. Farnan, Jr.

**OPINION**

*MEMORANDUM OPINION*

*September 17, 2007*

*Wilmington, Delaware*

**Farnan, District Judge**

Pending before the Court is an Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 ("Petition") filed by Petitioner Devearl L. Bacon ("Petitioner"). (D.I. 2.) For the reasons discussed, the Court concludes that the Petition is time-barred by the one-year period of limitations prescribed in 28 U.S.C. § 2244(d)(1).

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Petitioner was indicted for numerous crimes stemming from three robberies (one seven-eleven store, a liquor store, and an automobile) and one attempted robbery of a liquor store. The State *nolle prossed* the charges related to one of the robberies. After a three day trial in June 2001, a Delaware Superior Court jury returned guilty verdicts on the charges related to the two remaining robberies, and verdicts of not guilty on the charges related to the attempted robbery. Petitioner was convicted of fourteen offenses, [*2] including five counts of first degree robbery, two counts of possession of a firearm during the commission of a felony, one count of first degree carjacking, two counts of possession of a deadly weapon by a person prohibited, two counts of aggravated menacing, and two counts of wearing a disguise during the commission of a felony. *See State v. Bacon,* 2005 Del. Super. LEXIS 343, 2005 WL 2303810, at *1 (Del. Super. Ct. Aug. 29, 2005). The Superior Court sentenced Petitioner to thirty-four years of

imprisonment followed by twelve years of probation. *Id.* The Delaware Supreme Court affirmed Petitioner's convictions and sentences on direct appeal. *Bacon v. State,* 801 A.2d 10, 2002 WL 1472287 (Del. July 1, 2002).

In September 2004, Petitioner filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"), alleging six claims of ineffective assistance of counsel. The Superior Court denied the motion in August 2005, and the Delaware Supreme Court affirmed that decision in June 2006. *Bacon,* 2005 Del. Super. LEXIS 343, 2005 WL 2303810; *Bacon v. State,* 2006 Del. LEXIS 334, 2006 WL 1725589(Del. June 21, 2006).

In August 2006, Petitioner filed an application for federal habeas relief asserting six grounds for relief: (1) the trial court [*3] erred by permitting the joinder of three counts of possession of a deadly weapon by a person prohibited, and defense counsel was ineffective for failing to move for severance, to object to the joinder at trial, or to raise the issue on direct appeal; (2) the trial court erred by allowing charges relating to four separate locations to be tried together, and defense counsel was ineffective for failing to move for severance of the charges, to object to the joinder at trial, or to raise the issue on direct appeal; (3) defense counsel provided ineffective assistance by failing to object to the admission of prior bad acts evidence; (4) the in-court identification of Petitioner by one of the liquor store clerks violated Petitioner's right to a fair trial because there was no independent origin for the identification, and defense counsel was ineffective for failing to raise the issue on direct appeal; (5) counsel provided ineffective assistance by failing to object to an amendment to the indictment before trial; and (6) the prosecutor failed to disclose the videotape of Petitioner's statement to the police, and defense counsel failed to raise this issue at trial on or on direct appeal. (D.I. [*4] 3.) Respondents filed an Answer asserting that the Court should dismiss the Petition as untimely or, alternatively, because the claims fail to warrant relief under § 2254(d)(1). (D.I. 17.) Petitioner filed a Reply to the Answer, arguing that the Petition is not time-barred because he believed the Superior Court stayed the federal one-year limitations period in February 2003. (D.I. 25.)

## II. DISCUSSION

### A. One-Year Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") was signed into law by the President on April 23, 1996, and habeas petitions filed in federal courts after this date must comply with the AEDPA's requirements. *See generally Lindh v. Murphy,* 521 U.S. 320, 336, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997). The

AEDPA prescribes a one-year period of limitations for the filing of habeas petitions by state prisoners, which begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from [*5] filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

The Petition is subject to the one-year limitations period contained in § 2244(d)(1). *See Lindh,* 521 U.S. at 336. Petitioner does not allege, nor can the Court discern, any facts triggering the application of § 2244(d)(1)(B), (C), or (D). Accordingly, the one-year period of limitations began to run when Petitioner's conviction became final under § 2244(d)(1)(A).

In the instant case, the Delaware Supreme Court affirmed Petitioner's conviction and sentence on July 1, 2002, and Petitioner did not file a petition for a writ of certiorari in the United States Supreme Court. Consequently, Petitioner's conviction became final for the purposes of § 2244(d)(1) on September 30, 2002, [2] and he had until September 30, 2003 to file a timely habeas petition. *See Kapral v. United States,* 166 F.3d 565, 575, 578 (3d Cir. 1999); [*6] *Wilson v. Beard,* 426 F.3d 653 (3d Cir. 2005)(holding that Federal Rule of Civil Procedure 6(a) and (e) applies to federal habeas petitions). Petitioner, however, did not file the Petition until August 16, 2006, [3] approximately three years after the AEDPA's statute of limitations expired in 2003. Thus, the Petition is time-barred, unless the limitations period can be statutorily or equitably tolled. *See Jones v. Morton,* 195 F.3d 153, 158 (3d Cir. 1999). The Court will discuss each doctrine in turn.

Page 2

2   The ninety-day period to file a petition for a writ of certiorari actually expired on September 29, 2002, but because that day was a Sunday, Petitioner had until Monday, September 30, 2002, to file a petition for a writ of certiorari. *See* Sup. Ct. R. 30(1).

3   A prisoner's *pro se* habeas petition is deemed filed on the date he delivers it to prison officials for mailing to the district court. *See Longenette v. Krusing,* 322 F.3d 758, 761 (3d Cir. 2003)(the date on which a prisoner transmitted documents to prison authorities is to be considered the actual filing date); *Burns v. Morton,* 134 F.3d 109, 113 (3d Cir. 1998). The Court adopts the date on the Petition, August 16, 2006, as the filing date, [*7] because presumably, Petitioner could not have presented the Petition to prison officials for mailing any earlier than that date. *See Woods v. Kearney,* 215 F. Supp. 2d 458, 460 (D. Del. 2002).

## B. Statutory Tolling

Statutory tolling of the one-year limitations period is authorized by Section 2244(d)(2) of the AEDPA, which provides:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending should not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2). In this case, the Court concludes that the statutory tolling principles are inapplicable. Petitioner's Rule 61 motion, filed on September 17, 2004, does not toll the limitations period because it was filed more than a year after the expiration of AEDPA's limitations period. *See Price v. Taylor,* 2002 WL 31107363, at *2 (D. Del. Sept. 23, 2002)(explaining that a properly filed Rule 61 motion will only toll the limitations period if it was filed and pending before the expiration of the AEDPA's limitations period). Additionally, contrary to Petitioner's argument, the combined motion for transcripts and for [*8] a stay of the AEDPA's one-year limitations period that he filed in the Superior Court on February 23, 2003 does not toll the limitations period under § 2244(d)(2) because the motion did not challenge the lawfulness of Petitioner's conviction or sentence. *Hartmann v. Carroll,* 492 F.3d 478, 2007 WL 1967172, (3d Cir. 2007). Therefore, unless the doctrine of equitable tolling applies, the Petition is time-barred.

## C. Equitable Tolling

The AEDPA's limitations period may be equitably tolled, but "only in the rare situation where equitable tolling is demanded by sound legal principles as well as the interests of justice." *Jones,* 195 F.3d at 159 (3d Cir. 1999). In order to trigger equitable tolling, a petitioner must demonstrate that he "exercised reasonable diligence in investigating and bringing [the] claims" and that he was prevented from asserting his rights in some extraordinary way; mere excusable neglect is insufficient. *Miller v. New Jersey Dept. of Corrs.,* 145 F.3d 616, 618-19 (3d Cir. 1998); *Schlueter v. Varner,* 384 F.3d 69, 77 (3d Cir. 2004). Consistent with these principles, the Third Circuit has specifically limited equitable tolling of AEDPA's limitations period to the following [*9] circumstances:

> (1) where the defendant (or the court) actively misled the plaintiff;
>
> (2) where the plaintiff was in some extraordinary way prevented from asserting his rights; or
>
> (3) where the plaintiff timely asserted his rights mistakenly in the wrong forum.

*Jones,* 195 F.3d at 159; *see also Brinson v. Vaughn,* 398 F.3d 225, 231 (3d Cir. 2005)(equitable tolling is appropriate where the court misleads petitioner about steps necessary to preserve habeas claim).

In this case, Petitioner appears to argue that trial counsel impeded his ability to obtain trial transcripts, which, in turn, prevented him from filing the Petition in a timely manner. Alternatively, Petitioner contends that the Superior Court stayed the AEDPA's one-year limitations period, and therefore, this Court should honor that stay and equitably toll the limitations period. (D.I. 3, Appendix A.) For the following reasons, the Court concludes that neither of these arguments warrant equitable tolling.

The Third Circuit has held that an attorney's ineffective assistance may warrant equitable tolling, but only if the attorney's conduct is sufficiently egregious and the petitioner exercised reasonable diligence in pursuing his claims. [*10] *See Schlueter,* 384 F.3d at 77. Here, Petitioner's conclusory and unsupported statement regarding counsel's alleged failure to help him obtain the trial transcripts does not appear to constitute the type of "egregious behavior" or malfeasance necessary to trigger equitable tolling. Nevertheless, regardless of counsel's actions, the Superior Court provided Petitioner with copies of the trial transcripts in March 2003, when there were approximately 6 months remaining in the AEDPA's limitations period. (D.I. 3, Del. Super. Ct. Crim, Dkt. at Item 46; D.I. 3, at 13.) That six month period gave Petitioner

sufficient time to file a Rule 61 motion in the Superior Court which, in turn, would have statutorily tolled the AEDPA's limitations period under § 2244(d)(2). Petitioner, however, did not file his Rule 61 motion until September 2004, more than one year after he received the trial transcripts, and he does not assert any reason for that delay. Therefore, the Court concludes that the delay in receiving trial transcripts, even if somehow due to counsel's performance, does not trigger the equitable tolling doctrine because Petitioner did not exercise the requisite diligence in preserving his [*11] claims.

Additionally, Petitioner argues that the limitations should be equitably tolled because he believed the Superior Court granted his "Motion To Stay The One-Year Deadline Imposed By The Federal Habeas Corpus Act." (D.I. 25, at pp. 1-2, 5.) However, the Delaware Superior Court did not have jurisdiction to grant a motion to stay a federal limitations period governing a federal cause of action, and Petitioner's mistaken belief with respect to the Superior Court's authority does not warrant equitable tolling. See Del. Const. art. 4, §7 (jurisdiction of Superior Court); LaCava v. Kyler, 398 F.3d 271, 276 (3d Cir. 2005)("in non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the extraordinary circumstances required for equitable tolling")(internal citation omitted); Simpson v. Snyder, 2002 U.S. Dist. LEXIS 9204, 2002 WL 1000094, at *3 (D. Del. May 14, 2002)(a petitioner's lack of legal knowledge does not constitute an extraordinary circumstance for equitable tolling purposes). Moreover, the Superior Court clearly construed Petitioner's motion for a stay as an extension of time to file a Rule 61 motion, and denied that request. There is no indication [*12] that any court or party actively misled Petitioner with incorrect information regarding the proper forum for filing a motion for a stay, and this situation is not akin to one where the petitioner "timely asserted his rights in the wrong forum." [4] Thus, the Court concludes that Petitioner's specious argument fails to warrant equitable tolling. Accordingly, the Court will dismiss the Petition as time-barred.

> 4  In February 2003, Petitioner had not yet filed a federal habeas petition, and he also had not yet exhausted state remedies. Therefore, even if Petitioner had filed a motion to stay the limitations period in this Court in February 2003, the request to stay the limitations period would have been premature.

## III. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. See Third Circuit Local Appellate Rule 22.2. A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or [*13] wrong." 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000). If a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. Id.

The Court has concluded that Petitioner's Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 is time-barred. The Court is persuaded that reasonable jurists would not find this conclusion to be debatable, and therefore, the Court declines to issue a certificate of appealability.

## IV. CONCLUSION

For the reasons discussed, Petitioner's Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 will be denied. (D.I. 2.)

An appropriate Order will be entered.

## ORDER

At Wilmington, this 17 day of September, 2007, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:

1. Petitioner Devearl L. Bacon's Application For A Writ Of Habeas Corpus [*14] Pursuant To 28 U.S.C. § 2254 (D.I. 2.) is *DISMISSED,* and the relief requested therein is *DENIED.*

2. The Court declines to issue a certificate of appealability, because Petitioner has failed to satisfy the standards set forth in 28 U.S.C. § 2253(c)(2).

Joseph J. Farnan, Jr.

UNITED STATES DISTRICT JUDGE

LEXSEE



Cited
As of: Nov 16, 2007

**MICHAEL LEE LANG, Petitioner-Appellant, versus STATE OF ALABAMA, STEPHEN BULLARD, Warden, ATTORNEY GENERAL OF ALABAMA, Respondents-Appellees.**

No. 05-11206 Non-Argument Calendar

UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

179 Fed. Appx. 650; 2006 U.S. App. LEXIS 11352

May 5, 2006, Decided
May 5, 2006, Filed

**NOTICE:**    [**1] NOT FOR PUBLICATION

**PRIOR HISTORY:**    Appeal from the United States District Court for the Northern District of Alabama. D.C. Docket No. 03-00561-CV-IPJ-JEO.

**DISPOSITION:**   AFFIRMED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Appellant inmate sought review of a judgment from the United States District Court for the Northern District of Alabama, which dismissed as time-barred the inmate's 28 U.S.C.S. § 2254 petition for a writ of habeas corpus.

**OVERVIEW:** The inmate's conviction became final for purposes of the one-year statute of limitations in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C.S. § 2244(d)(1), on April 11, 2000. The inmate filed the instant federal petition on March 8, 2003. The inmate argued that he was entitled to equitable tolling of the one-year statute of limitations in the AEDPA because he suffered from various medical conditions. Specifically, in June 2000 the inmate was ordered not to sit or stand for more than a half hour at a time; in December 2000 the inmate underwent triple coronary bypass surgery, and in March 2001 the inmate underwent 10 weeks of chemotherapy for cancer. The court held that the district court did not err in finding that the inmate was not entitled to equitable tolling because

the inmate failed to show any extraordinary circumstances. The court reasoned that there was no evidence that the inmate was incapacitated before mid 2000, that he was unable to work on his petition after his surgery and before his chemotherapy, or that his conditions were so debilitating that he could not work on his petition.

**OUTCOME:** The court affirmed the district court's judgment.

**CORE TERMS:** limitation period, equitable tolling, pain, extraordinary circumstances, chest, sit, timely filing, chemotherapy, certificate, law library, medical conditions, hospitalization, time-barred, justifying, diligence, diligent, pursuing, surgery, healthy, corpus, rectal, minutes, toll, walk, jog

**LexisNexis(R) Headnotes**

*Criminal Law & Procedure > Habeas Corpus > Procedure > Filing of Petition > Time Limitations > General Overview*
[HN1]There is a two-year limitation period for Ala. R. Crim. P. 32 petitions.

*Criminal Law & Procedure > Habeas Corpus > Procedure > Filing of Petition > Time Limitations > Antiterrorism & Effective Death Penalty Act*

[HN2]The Antiterrorism and Effective Death Penalty Act of 1996 includes a one-year limitation period, 28 U.S.C.S. § 2244(d)(1).

*Criminal Law & Procedure > Habeas Corpus > Appeals > Standards of Review > Clear Error Review*
*Criminal Law & Procedure > Habeas Corpus > Procedure > Filing of Petition > Time Limitations > Equitable Tolling*
*Criminal Law & Procedure > Habeas Corpus > Procedure > Filing of Petition > Time Limitations > Review of Dismissals*
[HN3]A circuit court reviews de novo a district court's dismissal of a petition for writ of habeas corpus and its legal decision on equitable tolling. But the circuit court reviews for clear error the district court's determinations of relevant facts.

*Criminal Law & Procedure > Habeas Corpus > Procedure > Filing of Petition > Time Limitations > Equitable Tolling*
[HN4]In rare cases, the Antiterrorism and Effective Death Penalty Act of 1996's limitations period can be tolled equitably when extraordinary circumstances have worked to prevent an otherwise diligent petitioner from timely filing his petition. The petitioner must show both extraordinary circumstances and due diligence in order to be entitled to equitable tolling.

**COUNSEL:** For MICHAEL LEE LANG, Petitioner-Appellant: Michael Lee Lang, BESSEMER, AL., PRO SE.

For STATE OF ALABAMA, Respondent-Appellee: Stephanie N. Morman, Office of the Alabama Attorney General, MONTGOMERY, AL.

For STEPHEN BULLARD, Warden, ATTORNEY GENERAL OF ALABAMA, Respondents-Appellees: Hense R. Ellis, II, Alabama Attorney General's Office, MONTGOMERY, AL.

**JUDGES:** Before EDMONDSON, Chief Judge, DUBINA and HULL, Circuit Judges.

**OPINION**

[*651] PER CURIAM:

Alabama prisoner Michael Lee Lang appeals *pro se* the district court's denial of his federal habeas corpus petition, brought under 28 U.S.C. § 2254. This appeal is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). A judge of this Court granted

a certificate of appealability (COA) on whether the district court erred by dismissing Best's § 2254 petition as time-barred. No reversible error has been shown; we affirm.

No one disputes that Lang's conviction became final on 11 April 2000, when the Alabama Court of Criminal Appeals [**2] entered a certificate of judgment, and that he had until 12 April 2001 to file his § 2254 petition. Lang did not file his first state post-conviction Ala.R.Crim.P. 32 petition until 22 March 2002, which was timely under [HN1]the state's two-year limitation period, but was after the AEDPA's limitation period had expired. Thus, the time during which his Rule 32 petition was pending did not toll the AEDPA limitation period. *See Tinker v. Moore, 255 F.3d 1331, 1333 (11th Cir. 2001)*. The state appellate court affirmed the denial of his Rule 32 petition and entered a certificate of judgment on 24 January 2003. Lang filed his § 2254 petition on 8 March 2003.

This case is about whether Lang is entitled to equitable tolling of [HN2]the AEDPA's one-year limitation period, 28 U.S.C. § 2244(d)(1), due to his medical conditions. Before and during 2000, Lang suffered from painful hemorrhoids that required medication. From June to December 2000, Lang received orders not to sit or to stand for prolonged periods. On 23 February [*652] 2001, Lang was diagnosed with cancer of the anus. In early March 2001, Lang was prescribed a ten-week course of intravenous chemotherapy and [**3] began to suffer from nausea, dizziness, and fatigue. Also, beginning in December 2000, Lang intermittently began experiencing significant chest pain. On 24 July 2001, Lang underwent triple coronary bypass surgery and was hospitalized for six days. In January 2002, medical records showed that Lang was healthy enough to walk and jog.

Lang argues that his medical problems were beyond his control and unavoidable such that they constitute extraordinary circumstances justifying the equitable tolling of the AEDPA's limitation period. He contends that rectal pain and the do-not-sit orders prevented him from attending the law library, which requires inmates to sit. He also maintains that his chest pain and the effects of the chemotherapy prevented him from preparing his § 2254 petition. Lang asserts that the timely filing of his Alabama Rule 32 petition, shortly after he was healthy enough to walk and to jog, shows that he was diligent in pursuing his § 2254 petition.

[HN3]We review *de novo* a district court's dismissal of a petition for writ of habeas corpus and its legal decision on equitable tolling. Drew v. *Dep't of Corr., 297 F.3d 1278, 1283 (11th Cir. 2002)*. But we [**4] review for clear error the district court's determinations of relevant facts. *Id.* [HN4]In rare cases, the AEDPA's limita-

tions period can be tolled equitably "when 'extraordinary circumstances' have worked to prevent an otherwise diligent petitioner from timely filing his petition." *Helton v. Sec'y for Dep't of Corr.*, 259 F.3d 1310, 1312 (11th Cir. 2001). We have stressed that "the petitioner must show both extraordinary circumstances and due diligence in order to be entitled to equitable tolling." *Diaz v. Sec'y for Dep't of Corr.*, 362 F.3d 698, 701 (11th Cir. 2004).

We do not doubt that Lang suffered from significant health problems during the AEDPA limitation period. Lang, though, has not shown (1) that his medical conditions were sufficiently debilitating to constitute "extraordinary circumstances" justifying equitable tolling and (2) that he exercised enough diligence in pursuing his § 2254 petition during the limitation period. Lang suffered from rectal pain before the limitation period began to run and from chest pain beginning in December 2000. But no evidence shows that Lang experienced incapacity until mid-June 2000, when he received the first [**5] order not to sit for longer than 30 minutes at a time. And Lang offers no explanation why he could not sometimes sit in the law library for less than 30 minutes to prepare his § 2254 petition. Lang, also, has not shown that, before his July 2001 hospitalization, his chest pain was such that it prevented him from taking some action to pursue the timely filing of his § 2254 petition. Further, even were we to toll the limitation period during the ten weeks of Lang's chemotherapy and during his six-day hospitalization for heart surgery, Lang's § 2254 petition still would have been untimely.

The district court committed no error in determining that Lang was not entitled to the equitable tolling of the AEDPA limitation period. Thus, the district court correctly dismissed Lang's § 2254 petition as time-barred.

**AFFIRMED.**

LEXSEE



Cited
As of: Nov 16, 2007

**BOBBY ANGELO ANSALDO, Petitioner - Appellant, v. MIKE KNOWLES, Warden, Respondent - Appellee.**

No. 04-55808

**UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

**143 Fed. Appx. 839; 2005 U.S. App. LEXIS 20024**

**September 12, 2005, Argued and Submitted, Pasadena, California
September 15, 2005, Filed**

**NOTICE:** [**1] RULES OF THE NINTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** Appeal from the United States District Court for the Central District of California. D.C. No. CV-03-00747-AHS. Alicemarie H. Stotler, Judge, Presiding.

**DISPOSITION:** AFFIRMED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Petitioner prisoner appealed a judgment of the United States District Court for the Central District of California, which dismissed his federal habeas corpus petition as untimely.

**OVERVIEW:** The deadline under 28 U.S.C.S. § 2244 for the filing of the prisoner's habeas petition was March 20, 1999. The prisoner alleged that his visual impairment slowed his progress on the petition when he began working on it on January 15, 2001, after the limitations period had elapsed. The court held that the district court properly dismissed the petition as untimely because the prisoner was not entitled to an evidentiary hearing on the issue of equitable tolling due to his medical condition. The court held that the prisoner failed to allege and prove that the visual impairment prevented him from filing the petition on or before March 20, 1999. The court held that, even assuming that the prisoner's visual impairment

was the type of extraordinary circumstance that might have justified tolling, he did not allege that the impairment was the but-for, let alone, the proximate cause of his untimeliness.

**OUTCOME:** The court affirmed.

**CORE TERMS:** impairment, visual, equitable tolling, extraordinary circumstances, tolling, limitations period, untimeliness, entitle, but-for, medical condition, proximate cause, deadline, prisoner's

**LexisNexis(R) Headnotes**

*Criminal Law & Procedure > Habeas Corpus > Procedure > Filing of Petition > Time Limitations > Equitable Tolling*
[HN1]Equitable tolling of the deadline set forth in 28 U.S.C.S. § 2244 is available only where extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time and the extraordinary circumstances were the cause of his untimeliness. Thus, a habeas petitioner seeking equitable tolling must show that the extraordinary circumstances alleged were the but-for and proximate cause of his untimeliness.

**COUNSEL:** BOBBY ANGELO ANSALDO, Petitioner - Appellant, Pro se, MCSP - MULE CREEK STATE PRISON, Ione, CA.

For BOBBY ANGELO ANSALDO, Petitioner - Appellant: Jerry D. Whatley, Santa Barbara, CA.

For MIKE KNOWLES, Warden, Respondent - Appellee: Michael T. Murphy, AGCA - OFFICE OF THE CALIFORNIA ATTORNEY GENERAL (SAN DIEGO), San Diego, CA.

**JUDGES:** Before: SILVERMAN and CALLAHAN, Circuit Judges, and DUFFY ** , District Judge.

> ** The Honorable Kevin Thomas Duffy, United States District Judge for the Southern District of New York, sitting by designation.

**OPINION**

[*839] MEMORANDUM *

Bobby Ansaldo ("Petitioner") appeals the district court's dismissal of his federal habeas corpus petition as untimely. On June 24, 2004, this Court issued a Certificate of Appealability limited to the issue of "whether, in light of _Laws v. Lamarque,_ 351 F.3d 919 (9th Cir. 2003), [**2] [Petitioner] was entitled to an evidentiary hearing on the issue of equitable tolling due to his medical condition." We hold that Petitioner was not entitled to such a hearing and affirm the judgment of the district court.

> * This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3.

In _Laws v. Lamarque,_ "because Laws . . . made a good-faith allegation that, if true, entitle him to equitable tolling . . .the district court's denial of the petition [was vacated] and remand[ed] for further factual development of his claim that the limitations period should be tolled because of his mental incompetency during the period in which he could have timely filed." 351 F.3d at 919. That holding does not, however, upset the district court's dismissal in this case. Here, dismissal without further factual development was appropriate because Petitioner, unlike Laws, did not allege facts "that would, if [**3] true, entitle him to equitable tolling." _See Laws,_ 351 F.3d at 921.

[HN1]Equitable tolling of the deadline set forth in 28 U.S.C. § 2244 is available only where "extraordinary circumstances beyond a prisoner's control make it impos-

sible to file a petition on time _and the extraordinary circumstances were the cause of his untimeliness." Laws._ 351 F.3d at 922 (emphasis added and internal quotations omitted). Thus, a habeas petitioner seeking equitable tolling "must show that the 'extraordinary circumstances' [alleged] [*840] were the but-for and proximate cause of his untimeliness". _Allen v. Lewis,_ 255 F.3d 798, 800-01 (9th Cir. 2001). Here, even assuming Petitioner's alleged visual impairment is the type of extraordinary circumstance which might justify tolling, Petitioner did not allege that the impairment was the but-for, let alone the proximate, cause of his untimeliness. 1 Accordingly, he is not entitled to relief.

> 1 We do not pass on the question recently raised as to whether Petitioner's purported fear of reprisals (if prisoners at CSP-Corcoran were to learn of his child molestation convictions) could justify equitably tolling the limitations period. The Certificate of Appealability, which establishes our scope of review, is limited to whether Petitioner was entitled to a hearing regarding his medical condition. _See_ 28 U.S.C. § 2253(c).

[**4] Both parties agree that, absent tolling, Petitioner's deadline for filing a federal habeas petition was March 20, 1999. Petitioner did not allege that his visual impairment kept him from filing by that date. Rather, Petitioner only claimed that his visual impairment slowed his progress on the petition when he actually began working on it approximately January 15, 2001, one year and ten months after the limitations period had elapsed. Petitioner reiterated this argument in a verified pleading stating, "But for the limitations imposed by petitioner's visual impairment, petitioner would have submitted his petition within one year of arriving at the Sensitive Needs Program at Mule Creek [in December 2000]." Alleging that his visual impairment was the but-for cause delaying Petitioner's filing from December 2001 until July 2003 does not, however, entitle Petitioner to relief. Petitioner was required to allege (and ultimately prove) that his visual impairment prevented filing on or before March 20, 1999. Because he failed to do so, the district court's dismissal without further factual development was appropriate.

**AFFIRMED.**

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2007, I electronically filed the attached documents with the Clerk of Court using CM/ECF. I also hereby certify that on November 16, 2007, I have mailed by United States Postal Service, the same documents to the following non-registered participant:

> Aaron Carter
> No. 179415
> 1181 Paddock Road
> Delaware Correctional Center
> Smyrna, DE 19977

Kevin M. Carroll
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
Del. Bar. ID No. 4836
Kevin.Carroll@state.de.us

Date:  November 16, 2007